602 A.2d 728

IN THE MATTER OF TWO SEIZED FIREARMS.

Argued November 19, 1991—Decided March 4, 1992.

*Susan W. Sciacca,* Assistant Prosecutor, argued the cause for appellant State of New Jersey (*John J. Fahy,* Bergen County Prosecutor, attorney).

*Nancy E. Lucianna* argued the cause for respondent Mark J. Sholtis (*Lucianna & Lucianna,* attorneys; *Athan M. Mergus,* on the briefs).

*Gary J. Needleman* submitted a brief on behalf of *amici curiae* Riverdale Police Pistol Team, Inc. and the National Rifle Association of America (*Barbarula and Needleman,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

The question in this appeal is whether a non-resident gun owner may avoid the sanctions of New Jersey's gun-control laws on the basis that possession of the weapon was legal in the owner's state of residence and that the owner was merely transporting weapons through New Jersey without criminal intent and knowledge that New Jersey would regard the pos-

session as illegal. In that context, we must inquire whether New Jersey must permit a motorist from Florida to carry, on the New Jersey Turnpike, a loaded handgun in a glove compartment because Florida would permit such possession on its highways. We find that no principle of constitutional doctrine or of federal supremacy over the interstate transportation of weapons compels that result. New Jersey need not observe the lowest common denominator of gun control among the various states. It is illegal in New Jersey to transport a loaded handgun in this way without a license to carry. Firearms that are unlawfully possessed or carried in New Jersey are *prima facie* contraband under *N.J.S.A.* 2C:64-1 and are subject to forfeiture.

The parties have agreed on the facts. On August 9, 1988, State Police officers making a routine speeding stop of a Florida van on the New Jersey Turnpike spotted an eighteen-inch machete lying in open view between the driver and passenger seats. The troopers arrested the driver, Mark Sholtis (hereinafter referred to as defendant), and his passenger for possession of that dangerous weapon. Incident to the arrest, one of the troopers searched the interior of the stopped van. Inside the glove compartment he found a loaded .38 caliber Smith & Wesson handgun. Underneath and behind the driver's seat he discovered a loaded .357 magnum Smith & Wesson revolver, a speed loader containing five .38 caliber hollowpoint cartridges, five .38 caliber blue-tipped cartridges, and a container of marijuana. The State Police subsequently charged defendant with illegal possession of the handguns, contrary to *N.J.S.A.* 2C:39-5b; of the hollow-point bullets, contrary to *N.J.S.A.* 2C:39-3f; and of the machete, contrary to *N.J.S.A.* 2C:39-3e. The passenger in defendant's van gave a written statement acknowledging ownership of the marijuana.

The Bergen County Prosecutor consented to defendant's admission into the Pre–Trial Intervention Program (PTI), see *Rule* 3:28, conditioned on his signing a weapons-release form. At the PTI hearing, defendant argued that that condition was unfair

because his home state of Florida would allow him to carry loaded guns in his car. (The Bergen County Prosecutor's Office questioned whether, even under Florida law, defendant had legally transported the loaded handguns, citing the requirements of *Fla.Stat.* 790.25(3)(1) and (5) that the firearm be "securely encased" or not otherwise "readily accessible for immediate use.") The Law Division admitted defendant into PTI but reserved decision on return of the two firearms. On defendant's successful completion of the PTI program, the Law Division dismissed all charges against him.

Thereafter, the Law Division ordered the State to return the two guns to Sholtis. The Law Division recognized that unlawfully possessed firearms are considered *prima facie* contraband under New Jersey's forfeiture statute, *N.J.S.A.* 2C:64-1 to -9. It concluded, however, that the statute does not apply in this case because of the property rights implicated and because principles of comity compelled deference to Florida law. The court thus ordered the return of the weapons to Sholtis under the auspices of Florida law-enforcement authorities to prevent illegal possession by Sholtis in New Jersey. The State appealed, and the Appellate Division affirmed *per curiam.* We granted the State's petition for certification, 126 *N.J.* 329, 598 *A.*2d 888 (1991), and now reverse.

But for consideration of whether New Jersey's gun control laws and forfeiture provisions are preempted by federal statute providing for the interstate transportation of firearms, 18 *U.S.C.A.* § 926A, all the issues presented in this case have been foreclosed by earlier decisions of this Court and the United States Supreme Court. In *State v. Hatch*, 64 *N.J.* 179, 313 *A.*2d 797 (1973), this Court disapproved of a trial court ruling that in the absence of notice or knowledge of further requirements by New Jersey, a nonresident passing through New Jersey may possess a handgun or other firearm so long as that possession is not violative of the law of his or her own state. *Id.* at 188–89, 313 *A.*2d 797. The *Hatch* Court concluded that to carry handguns in one's car or on one's person along the highways is,

apart from certain exemptions, "clearly forbidden unless the person carrying the handgun has a permit issued in accordance with *N.J.S.A.* 2A:151–41, –44 (predecessor to *N.J.S.A.* 2C:58–4)." *Id.* at 186, 313 *A.*2d 797. The Court noted that "[w]hen dealing with the carrying of handguns we find nothing in the statute which suggests any flexibility or any intent to exclude nonresidents within or passing through New Jersey from the strict permit requirement." *Ibid.* Like Hatch, "when [Sholtis] came into New Jersey * * * he subjected himself to New Jersey's gun control regulations." *Id.* at 188, 313 *A.*2d 797.

■ New Jersey has carefully constructed a "grid" of regulations for handguns that differentiates between permission to possess a handgun and permission to carry a handgun. *State v. Ingram,* 98 *N.J.* 489, 495 n. 1, 488 *A.*2d 545 (1985). Few persons in this state are exempt from the criminal provisions for carrying a gun without a permit. *See N.J.S.A.* 2C:39–6. That the non-resident gun owner had no knowledge of the specifics of New Jersey's gun-control laws is of no moment. Gun-control laws are preeminently regulatory. *United States v. Freed,* 401 *U.S.* 601, 91 *S.Ct.* 1112, 28 *L.Ed.*2d 356 (1971). "[W]here dangerous or deleterious devices or products are involved, the probability of regulation is so great that anyone who is aware that he is either in possession of or dealing with them must be presumed to be aware of the regulation." *McIntosh v. Washington,* 395 *A.*2d 744, 756 (D.C.1978) (citing *United States v. International Minerals & Chem. Corp.,* 402 *U.S.* 558, 564, 91 *S.Ct.* 1697, 1701–02, 29 *L.Ed.*2d 178, 183 (1971). In the context of gun-control laws courts have held that ignorance of the law is no defense to even a statute requiring that the defendant have "knowingly" violated the law. *United States v. Sherbondy,* 865 *F.*2d 996, 1002 (9th Cir.1988).

■ The absence of a criminal conviction does not preclude forfeiture of the weapons. *See N.J.S.A.* 2C:64–4(b) ("The fact that a prosecution involving seized property terminates without a conviction does not preclude forfeiture proceedings against

the property"); *United States v. One Assortment of 89 Firearms,* 465 *U.S.* 354, 104 *S.Ct.* 1099, 79 *L.Ed.*2d 361 (1984) (criminal acquittal on dealing in firearms without a license did not bar subsequent civil forfeiture proceeding against weapons themselves under federal law). (In certain circumstances, however, 18 *U.S.C.A.* § 924(d)(1) now requires a criminal conviction as a condition to federal forfeiture of illegally-possessed firearms.)

Unlicensed firearms are subject to mandatory forfeiture in New Jersey, because as with illegally imported narcotics, *United States v. Jeffers,* 342 *U.S.* 48, 72 *S.Ct.* 93, 96 *L.Ed.* 59 (1951), and unregistered stills, alcohol, and mash, *Trupiano v. United States,* 334 *U.S.* 699, 68 *S.Ct.* 1229, 92 *L.Ed.* 1663 (1948), there is an express public policy against possession of such objects. *See One 1958 Plymouth Sedan v. Pennsylvania,* 380 *U.S.* 693, 699, 85 *S.Ct.* 1246, 1250, 14 *L.Ed.*2d 170, 174 (1965) (distinguishing the imported narcotics and unregistered still, alcohol, and mash from an unlawfully-used automobile, the latter being only derivative contraband because but for its use it would be a thoroughly legal instrumentality).

As one of the most heavily traveled corridor states in the nation, New Jersey has a particularly compelling interest in regulating the carriage of weapons within its borders. New Jersey's forfeiture provisions further the purposes of gun-control legislation by "[k]eeping potentially dangerous weapons out of the hands of unlicensed [users]." *United States v. One Assortment of 89 Firearms, supra,* 465 *U.S.* at 364, 104 *S.Ct.* at 1106, 79 *L.Ed.*2d at 369; *see also Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 *U.S.* 663, 687 n. 26, 94 *S.Ct.* 2080, 2094 n. 26, 40 *L.Ed.*2d 452, 470 n. 26 (1974) ("Seizure and forfeiture statutes also help compensate the Government for its law enforcement efforts and provide methods for obtaining security for subsequently imposed penalties and fines.").

New Jersey denotes "firearms which are unlawfully possessed, carried, acquired or used" as *"prima facie* contra-

band," *N.J.S.A.* 2C:64–1a(1), but treats them as "per se" contraband. Such weapons are "subject to forfeiture and no property right shall exist in them." *Ibid.* The civil procedures applicable to derivative contraband, *State v. One 1986 Subaru,* 120 *N.J.* 310, 576 *A.*2d 859 (1990), do not apply to *prima facie* contraband. *N.J.S.A.* 2C:64–2 provides that

> *prima facie* contraband shall be retained by the State until entry of judgment or dismissal of the criminal proceeding, if any, arising out of the seizure. Thereafter, *prima facie* contraband shall be forfeited to the entity funding the prosecuting agency involved, subject to the rights of owners and others holding interests pursuant to section 2C:64–5.

The qualification in *N.J.S.A.* 2C:64–5 concerning the innocent involvement of property in unlawful activity does not apply to the illegal possession of weapons. All that is required is that the forfeiture proceedings meet constitutional requirements. *See N.J.S.A.* 2C:64–1b ("Seizure [of *prima facie* contraband] without such process [criminal or civil] may be made when not inconsistent with the Constitution of this State or the United States."). We are satisfied that the proceedings in this case furnished sufficient procedural due process to the property owner to assert any claim that the possession of the weapons was not illegal in New Jersey or any other cognizable claim to the property.

Thus, only the interdiction of 18 *U.S.C.A.* § 926A could prevent application of the State's forfeiture provision to defendant. That statute serves, however, as a two-edged sword in this case. Although enacted to assure to gun owners freedom to travel from state to state with weapons legally possessed in the state of residence, the statute qualifies that freedom with the sensible accommodation of each state's right to ensure the safety, health, and welfare of its own citizens. To obtain the umbrella of federal protection set forth in 18 *U.S.C.A.* § 926A, the gun owner must be legally qualified to possess and carry the firearm, and must transport it unloaded, and neither the firearm nor any ammunition can be "readily accessible" or "directly accessible" from the passenger compartment of the vehicle. The statute provides further that "in the case of a

vehicle without a compartment separate from the driver's compartment [as is the case here] the firearm or ammunition shall be contained in a locked container other than the glove compartment or console." 18 *U.S.C.A.* § 926A. *See also* David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective,* 17 *Cumb.L.Rev.* 585, 676–80 (1987) (discussion of historic and legal perspectives of the Act).

None of the conditions of the federal statute has been met here as both revolvers were "readily accessible" and loaded at the time that the State Police stopped defendant's van. Consequently, Sholtis had no federally-protected right under 18 *U.S.C.A.* § 926A to transport his loaded revolvers in the glove compartment and in the cab of the van. We are satisfied that the provisions of 18 *U.S.C.A.* § 926A sufficiently address the concerns for comity expressed by the courts below. No other principles of substantive due process or procedural fairness contravene the express language of *N.J.S.A.* 2C:64–1(a).

The judgment of the Appellate Division is reversed. The cause is remanded to the Law Division for forfeiture of the contraband weapons to the entity funding the prosecuting agency involved.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.