963 A.2d 281

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JAMA SMITH, DEFENDANT–APPELLANT.

Argued October 7, 2008—Decided January 27, 2009.

*Diane Toscano,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Deborah C. Bartolomey,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General of New Jersey, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

This appeal raises the question whether a defendant must know that a weapon is defaced to be convicted of the offense of possession of a defaced weapon, contrary to *N.J.S.A.* 2C:39–3(d).

In October 2002, defendant Jama Smith was observed in the City of Paterson participating in a drug transaction, which led ultimately to his conviction for possession of a defaced weapon. On appeal, defendant contended that he was denied a fair trial because the court's jury instruction on that offense failed to require a finding that defendant knew the firearm was defaced.

The Appellate Division rejected that argument and affirmed defendant's conviction for possession of a defaced weapon. For the reasons that follow, we affirm.

I.

The following facts were adduced from Sergeant Stanley Rodriguez's testimony at defendant's trial. On October 6, 2002, at approximately one o'clock in the morning, Rodriguez and Officer Felix Arroyo were on patrol in an unmarked car when Rodriguez saw defendant and another man standing in front of a building. Rodriguez observed what he believed to be a drug transaction taking place between the two. The unidentified man handed defendant paper currency and defendant gave him an item in return.

The officers parked the car and approached the men. When defendant noticed them approaching, he began to walk away. Rodriguez watched defendant discard a small plastic bag as he walked down the street. Rodriguez retrieved the bag, found inside it what he believed to be crack cocaine, and informed Arroyo of its contents. Arroyo immediately ordered defendant to stop. Instead, defendant began to run.

The officers pursued defendant and, as Rodriguez caught up to him, defendant reached into his waistband and pulled out a handgun. Rodriguez drew his gun, pointed it at defendant, and ordered him to drop the gun. Eventually Rodriguez tackled defendant, however, defendant struggled to avoid arrest. During their struggle, defendant's hand hit the corner of the sidewalk, causing his gun to fall to the ground and to slide under a nearby white van. Arroyo retrieved the gun, identified later as a .380 caliber semi-automatic handgun.

Defendant was arrested and charged with fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d), and eleven other counts. At trial, Detective Antonio Urena testified about the weapon's defacement. When asked if he was able to discern the weapon's serial number, Urena answered in the negative because

the serial number had been "scratched out." Pointing to a specific area of the gun's frame, the detective testified that "[there were] serial numbers right here on the frame right below the slide. But [they are now] indiscernible." Based on his experience, Urena labeled the weapon a "defaced" firearm.[1]

At the conclusion of the trial testimony, the court instructed the jury as follows on the defaced weapon offense:

In Count 11 the defendant is charged with possession of a defaced firearm contrary to the provisions of New Jersey law on October 6th, 2002[,] in the City of Paterson.

The statute upon which this charge is based reads as follows[:]

Any person who knowingly has in his possession any firearm which has been defaced is guilt[y] of a crime.

In order to convict the defendant of this charge the State has the burden of proof beyond a reasonable doubt of each of the following elements;

First, that there is an item in evidence which is, in fact, a firearm.

Second, that the firearm was defaced.

Third, that the defendant possessed the same knowingly at the time of the event on October 6th, 2002.

The same definition that I previously gave you with regard to a firearm applies and that includes any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectile ball, slug, pellet, missile, or bullet or any case vapor or other noxious thing by means of a cartridge of [sic] shell or by the action of an explosive or the igniting of flammable or explosive substances.

The word deface means to remove, cover, alter, or destroy the name of the maker, model, manufacture, serial number or other distinguishing identification mark or number on any firearm.

So the State must prove, first of all, that there was a firearm.

Second that the firearm was defaced. And—

Third, that the defendant knowingly possessed that firearm.

Again, knowingly means a person acts with—knowingly with respect to his conduct if he's aware that his conduct is of that—is of that nature.

The State must prove that the defendant was aware that he possessed the firearm. Since knowingly is a state of mind that cannot be seen and can only be determined by inference from conduct, words or acts it is rarely susceptible of direct proof.

---

[1] A defaced firearm includes one whose serial number or other identifying mark has been removed or altered. *N.J.S.A.* 2C:39–1(b) defines "deface" as "to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm."

And, therefore, it's not necessary that witnesses be produced by the State to testify that an accused said that he knowingly possessed a firearm. His knowledge may be gathered from his acts and his conduct and from all that he said and did at a particular time and place and from all the surrounding circumstances reflecting the—reflected in the testimony.

Thus, after careful consideration of all the evidence in this case you find that the State has failed to prove beyond a reasonable doubt any of the elements charged than [sic] you must find the defendant not guilty.

If, on the other hand, you're satisfied that the State has proven beyond a reasonable doubt that there is a firearm, that the firearm was defaced and that the defendant knowingly possessed the same at the time of this event on October 6th, 2002[,] in the City of Paterson than [sic] you must find the defendant guilty.

The jury returned a guilty verdict against defendant on the charge of possession of a defaced firearm.[2]

Defendant appealed and asserted, among other things, that the trial court erred by omitting the element of knowledge of defacement in its instruction on possession of a defaced firearm. In support of his claim of instructional error, defendant relied on a January 9, 2006, revision to the Model Jury Charge on possession of a defaced weapon, a revision that had not occurred until a year and a half after his conviction. The changed instruction requires the State to prove that the defendant possessed the weapon knowing that it was defaced.

In an unpublished opinion, the Appellate Division rejected defendant's argument that knowledge of the weapon's defacement is an element of the offense, and held that knowingly possessing a weapon that happens to be defaced is sufficient for conviction under *N.J.S.A.* 2C:39–3(d). In construing subsection (d), the panel noted the parallel language and proximity of *N.J.S.A.*

---

[2] The jury also convicted defendant of third-degree possession of a controlled dangerous substance (CDS), *N.J.S.A.* 2C:35–10(a)(1); third-degree possession of CDS with the intent to distribute, *N.J.S.A.* 2C:35–5(a)(1) and 2C:35–5(b)(3); third-degree possession of CDS with the intent to distribute within 1,000 feet of a school, *N.J.S.A.* 2C:35–7; third-degree resisting arrest, *N.J.S.A.* 2C:29–2(a); second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(a); third-degree unlawful possession of a weapon while committing a narcotics offense, *N.J.S.A.* 2C:39–4.1; and second-degree certain persons not to possess weapons, *N.J.S.A.* 2C:39–7.

2C:39-3's subsections (a), (b) and (c), which respectively prohibit the possession of destructive devices, sawed-off shotguns, and firearm silencers. To convict under those offenses, the State must prove only that the defendant knew that he possessed the prohibited item. The Appellate Division reasoned that the Legislature intended, in the case of the similarly worded subsection (d) offense, that the State must prove only the fact of possession of the defaced firearm. As for the defendant's reliance on the changed language of the Model Jury Charge, the panel noted that there had not been any legislative changes to *N.J.S.A.* 2C:39-3(d) or to case law interpreting and applying the statute, which could have supported a revised view of the proofs necessary to convict under the offense. The panel concluded, therefore, that the change to the Model Jury Charge, which incorporated a knowledge-of-defacement element, had been made in error.

The Appellate Division affirmed defendant's conviction, remanding only for resentencing in light of our decision in *State v. Natale,* 184 *N.J.* 458, 878 *A.*2d 724 (2005). We granted certification limited solely to reviewing defendant's claim that, to convict under *N.J.S.A.* 2C:39-3(d), the State must prove a defendant's knowledge of possession of the weapon and knowledge of the weapon's defacement. *State v. Smith,* 193 *N.J.* 584, 940 *A.*2d 1217 (2008).

## II.

This appeal involves one of New Jersey's gun control laws. "New Jersey has carefully constructed a 'grid' of regulations" on the subject of gun control. *In re Two Seized Firearms,* 127 *N.J.* 84, 88, 602 *A.*2d 728, *cert. denied sub nom. Sholtis v. New Jersey,* 506 *U.S.* 823, 113 *S.Ct.* 75, 121 *L.Ed.*2d 40 (1992). In Chapter 39, the Legislature created a comprehensive regulatory program for law enforcement "that deals with the possession of destructive devices, explosives, firearms, firearm silencers, machine guns, rifles, shotguns, sawed-off shotguns and other similar weapons." *State v. Ingram,* 98 *N.J.* 489, 499, 488 *A.*2d 545 (1985). "Broadly speaking, the framework for regulating the possession of firearms

and other weapons is contained in three sections of Chapter 39: *N.J.S.A.* 2C:39–3, –4, and –5." *State v. Harmon*, 104 *N.J.* 189, 197, 516 *A.*2d 1047 (1986).

In this matter we must interpret what the term "knowingly" modifies in *N.J.S.A.* 2C:39–3(d). That provision, proscribing the possession of a defaced firearm, states that

[a]ny person who knowingly has in his possession any firearm which has been defaced, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

Defendant argues that the term "knowingly" in that provision could be read sensibly in two ways. Under one interpretation, "knowingly" could be read to modify "possession," requiring only that the State prove defendant's knowledge of the fact of possession in order to convict for possession of the prohibited item (the defaced firearm). Under the other, "knowingly" could be read to modify the entire phrase, "possession of any firearm which has been defaced." Under the second interpretation, the State would be required to prove defendant's knowledge of a firearm's deface-ment in order to convict. Defendant asserts that the Legislature did not plainly establish that the offense would be a per se offense and that, therefore, a "knowing" level of culpability should be held to apply to the fact of the firearm's defacement.

In light of the two plausible interpretations, defendant further argues that the language is ambiguous. Thus, he claims that examination of the statute's legislative history and the recent interpretation given to the statute by the Supreme Court Model Criminal Jury Charge Committee, provide further support for the proposition that the State must prove his knowledge of the gun's defacement. Last, defendant seeks application of the rule of lenity in his case because of the statute's ambiguity.

The State argues that the plain language and syntax of the provision support a single reasonable interpretation, that "know-ingly" modifies "possession" and that, therefore, proving posses-sion of the prohibited item suffices for a conviction. The State emphasizes that the same interpretation has been long ascribed to

related, and similarly worded subsections of the statute and that the Legislature has acquiesced to the courts' interpretation of those provisions of *N.J.S.A.* 2C:39–3 as per se offenses. Further, the State disputes that legislative history provides any support for defendant's interpretation of the statute.

### III.

### A.

When called on to construe a legislative enactment, our goal is to discern and implement the intent of the Legislature. *See State v. Brannon,* 178 *N.J.* 500, 505, 842 *A.*2d 148 (2004). We start with the language of the statute itself. *Id.* at 505–06, 842 *A.*2d 148. Because the wording used by the Legislature provides the most direct path toward understanding legislative intent, we examine the plain language of the statute and ascribe to the words their ordinary meaning. *See DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005).

In the provision in question, the Legislature placed the term "knowingly" immediately before the phrase, "has in his possession a firearm." There then follows another, subordinate phrase, "which has been defaced," that describes further the nature of the proscribed item. Were we to accept defendant's interpretation, we would, in effect, be required to read the provision to proscribe knowing "possession of any firearm which [*he knows*] has been defaced." Plainly, courts are not to read into a statute words that were not placed there by the Legislature. As we have noted before, "[i]t is not the function of this Court to rewrite a plainly-written enactment of the Legislature or [ ] presume that the Legislature intended something other than that expressed by way of the plain language." *Ibid.* (internal citations and quotations omitted).

Moreover, in this instance it is notable that the Legislature placed the modifying phrase, "which *has been* defaced," in an attenuated position from the word "knowingly." The Legislature

could have chosen to express itself differently in respect of a firearm's defacement. It could have chosen to use an adjective ("knowingly has in his possession a [defaced] firearm") to modify the term "firearm," instead of using a passive phrase that further attenuates the fact of defacement from the term, "knowingly." Although that alternative phraseology would not have compelled a different conclusion, particularly in light of the similar phrasing of other subsections of *N.J.S.A.* 2C:39-3, the suggested alternate language would have provided stronger support for defendant's preferred interpretation. As the statute actually reads, the legislative choice of phraseology better supports the interpretation urged by the State in that it suggests that the Legislature meant for "knowingly" to focus on the possession of the prohibited item, and not the illicit nature of the object.

We are encouraged, when construing the words of a statute, to "read and examine the text of the act and draw inferences concerning the meaning from its composition and structure." 2A Norman J. Singer, Sutherland *Statutory Construction* § 47:1 (7th ed. 2007). And, ordinarily, when a statute's language is clear and unambiguous, we " 'need delve no deeper than the act's literal terms to divine the Legislature's intent.' " *State v. Thomas,* 166 *N.J.* 560, 567, 767 *A.*2d 459 (2001) (quoting *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982)). Judging from the wording that the Legislature used to express itself in *N.J.S.A.* 2C:39-3(d), it appears that the State has the better argument as to the likely legislative intent, namely that "knowingly" modifies only "possession" of the proscribed item.

That said, we shall assume for purposes of thoroughness that the language of the statute contains some ambiguity and, therefore, in such circumstances it is permissible to turn to extrinsic evidence for aid in interpreting this statute. *See, e.g., State v. Crawley,* 187 *N.J.* 440, 453, 901 *A.*2d 924 (2006) (examining extrinsic evidence of legislative history and related statutes for assistance in statutory construction). In this instance, those aids all provide further support for the conclusion that the Legislature

meant for subsection (d) to be applied as a per se possessory offense. We turn first to related statutes.

## B.

Nearly twenty-five years ago this Court observed that the New Jersey Code of Criminal Justice (Criminal Code) "reveal[ed] a carefully constructed scheme for the criminalization of possession of weapons in various situations, depending on the nature of the weapon, the intent of the possessor, and the surrounding circumstances." *State v. Lee*, 96 *N.J.* 156, 160, 475 *A.*2d 31 (1984). *Lee* involved the interpretation of *N.J.S.A.* 2C:39-5(d), a statute criminalizing possession of objects that "can be used as weapons under circumstances not manifestly appropriate for such lawful uses as those objects may have." *Id.* at 161, 475 *A.*2d 31. Justice Pollock, writing for the Court, nevertheless undertook a comprehensive review of the Legislature's approach to criminalizing the possession of weapons in order to best understand the construction question before the Court. *Id.* at 160–61, 475 *A.*2d 31.

*Lee* explained that Chapter 39 of the Criminal Code addresses three classes of weapons. *Id.* at 160, 475 *A.*2d 31. The Court described the first class, in which it included *N.J.S.A.* 2C:39-3(b) (concerning possession of sawed-off shotguns), as making mere possession of certain weapons a per se offense. *Ibid.* The second class of weapons identified in *Lee* prohibits possession of a weapon with the intent to use it against the person or category of another. *Ibid.* *N.J.S.A.* 2C:39-4 was cited as an example. *Ibid.* The final class discussed concerned the possession of certain weapons under circumstances not manifestly appropriate for such lawful uses as the object may have, which class contained the statute under the Court's consideration, *N.J.S.A.* 2C:39-5. *Id.* at 161, 475 *A.*2d 31.

Analysis of those classes of weapons led the Court to conclude that the categories were not intended to be mutually exclusive and that they must be read together. *Ibid.* The Court noted that in the second class under *N.J.S.A.* 2C:39-4, a person has formed the intent to use the weapon for an unlawful purpose, whereas in the

third class, of which *N.J.S.A.* 2C:39–5(d) is a part, a person has not yet formed the intent to use the weapon under circumstances in which it is likely to be used. *Ibid.* Therefore, the Court concluded in *Lee* that to read into *N.J.S.A.* 2C:39–5(d) a requirement of unlawful intent would render the provision meaningless in light of 2C:39–4. *Id.* at 162–63, 475 *A.*2d 31.

■ Since the decision in *Lee* so characterized the classes of weapons whose possession is criminalized in Chapter 39 of the Criminal Code, and specifically since this Court described *N.J.S.A.* 2C:39–3(b) as an example of a per se possessory offense, the Legislature has not acted to indicate disagreement of any sort with our interpretation of its intent. *See State v. Chapland,* 187 *N.J.* 275, 291, 901 *A.*2d 351 (2006) (stating that "Legislature is presumed to be aware of the judicial construction placed on an enactment"). When, after a long period, the Legislature does not act to amend a statute to contradict our interpretation, then we may presume its acquiescence to the construction given to the provision. *Id.* at 291, 901 *A.*2d 351 (citing *Macedo v. Dello Russo,* 178 *N.J.* 340, 346, 840 *A.*2d 238 (2004)); *see also Johnson v. Scaccetti,* 192 *N.J.* 256, 277, 927 *A.*2d 1269 (2007) ("[T]he legislature knows how to express its disagreement with case law by amending a statute if it believes a court has misconstrued its intent.").

Thus, we presume that the Legislature, for nearly twenty-five years now, has agreed with the view, expressed in *Lee,* that *N.J.S.A.* 2C:39–3(b) intended to make the *possession* of certain illicit weapons, such as a sawed-off shotgun, a per se offense. *See, e.g., State v. Villar,* 150 *N.J.* 503, 510, 696 *A.*2d 674 (1997) (expressing commonly held view of per se nature of 2C:39–3(b)'s possessory offense). Indeed, many courts already have extrapolated *Lee's* reference to subsection (b), being a per se offense, as applicable to the other like-worded subsections of 2C:39–3. *See, e.g., State v. Blaine,* 221 *N.J.Super.* 66, 68, 533 *A.*2d 980 (App.Div. 1987) ("As the Supreme Court made clear [in *Lee*] ... *N.J.S.A.* 2C:39–3 defines various categories of prohibited weapons and

devices whose bare possession constitutes a crime of the third or fourth degree. Five of these categories, namely destructive devices, sawed-off shotguns, silencers, defaced firearms, and dumdum bullets ... define weapons and devices the possession of which is per se criminal."); *see also* Cannel, *New Jersey Criminal Code Annotated,* comment 2 on *N.J.S.A.* 2C:39–3 (2007) ("This section has been interpreted as creating a per se violation for the mere knowing possession of those weapons enumerated.").

Extrapolation aside, the expansive application given to *Lee's* interpretative comment about subsection (b), coupled with the legislative acquiescence thereto, casts a long shadow over our current interpretative task. Subsection (d) of 2C:39–3 contains parallel language to that used by the Legislature in crafting subsection (b). Indeed, that parallelism, the proximity of the subsections, appearing as they do in the same section of the Criminal Code, and their similar public purpose to proscribe the possession of a similar class of objects, lends further support to interpreting the legislative will in respect of subsection (d) in the same fashion as subsection (b) and its like provisions.

The opening subsections of *N.J.S.A.* 2C:39–3 provide in their entirety as follows:

a. Destructive devices. Any person who knowingly has in his possession any destructive device is guilty of a crime of the third degree.

b. Sawed-off shotguns. Any person who knowingly has in his possession any sawed-off shotgun is guilty of a crime of the third degree.

c. Silencers. Any person who knowingly has in his possession any firearm silencer is guilty of a crime of the fourth degree.

d. Defaced firearms. Any person who knowingly has in his possession any firearm which has been defaced, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

e. Certain weapons. Any person who knowingly has in his possession any gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus or similar leather band studded with metal filings or razor blades imbedded in wood, ballistic knife, without any explainable lawful purpose, is guilty of a crime of the fourth degree.

An obvious pattern of language emerges from review of subsections (a) through (d). Each contains identical text identifying the proscribed possession: "Any person who knowingly has in his

possession [X]." The only change from subsection (a) through (d) is the object whose possession gives rise to the offense: (a) destructive devices, (b) sawed-off shotguns, (c) firearm silencers, and (d) defaced firearms. Only when one reaches subsection (e) does the Legislature's pattern of language change by the further addition of "without any explainable lawful purpose." [3]

Furthermore, we take from the parallel language contained in subsections (a) through (d), and from the fact that the Legislature grouped the subsections together, one after another, in the same section of the Criminal Code, that the Legislature would have expected the language to be interpreted and applied in like fashion. So viewed, we conclude that the Legislature intended for the term "knowingly" to modify only a defendant's "possession" of the illicit object, here a defaced firearm. Indeed, we note that even when that same construct of language has appeared in another section of the Criminal Code addressing a different weapons-possession offense, *N.J.S.A.* 2C:39–5(f), it has been interpreted as having been "intended to proscribe knowing possession, as distinguished from knowledge of the illegal character of the article possessed." *State v. Pelleteri,* 294 *N.J.Super.* 330, 334, 683 *A.*2d 555 (App.Div.1996).

## C.

Finally, examination of the legislative history to *N.J.S.A.* 2C:39–3(d) does not provide any persuasive countervailing argument against our finding that the Legislature meant for subsection (d) to be a per se possessory offense.

In 1971, the New Jersey Criminal Law Revision Committee recommended to the Legislature, as part of its comprehensive updating and consolidation of the State's criminal statutes, the

---

[3] Plainly, the Legislature perceived the objects proscribed in subsections (a) through (d) not to have any explainable lawful purpose. It signaled that those objects are per se illicit. There is no inquiry into a defendant's purpose or intent in respect of the items proscribed by subsections (a) through (d).

adoption of *N.J.S.A.* 2C:39–3(h), which stated that "[a]ny person who knowingly has in his possession a machine gun or firearm which has been defaced *for the purpose of either concealment or prevention of the detection of a crime, or misrepresentation of the identity of such machine gun or firearm* is guilty of a crime of the fourth degree." 1 *The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission*, § 2C:39–3(h), at 137 (1971) (Final Report) (emphasis added). The Commission stated that it based its recommended language, verbatim, on the extant version of New York's defaced-weapon statute. 2 *Final Report,* cmt. 8 on 2C:39–3(h), at 309.

However, the version that was adopted by the Legislature as 2C:39–3(d) of the Criminal Code excluded the language that identified the proscribed weapons as those that were "defaced for the purpose of either concealment or prevention of the detection of a crime, or misrepresentation of the identity." *See L.* 1978, *c.* 95, § 2C:39–3. That historical adjustment to this provision has been perceived, correctly, as emphasizing a legislative preference for focusing on "forbidding the possession of any defaced firearm." Cannel, *New Jersey Criminal Code Annotated,* comment 6 on *N.J.S.A.* 2C:39–3(d) (2007) ("Subsection d is derived from proposed 2C:39–3h, but with significant changes."). Accordingly, contrary to defendant's argument that subsection (d) should be construed consistent with New York's construction of its defaced-weapons offense, we perceive from that history no reason that New York law should inform our analysis.

■ In conclusion, we hold that the term "knowingly" in *N.J.S.A.* 2C:39–3(d) modifies "possession" of a firearm which has been defaced. The State was not required to prove that, at the time that he knowingly possessed the firearm, defendant also knew that it was defaced. We therefore reject defendant's assertion that the trial court's charge was in error, and we affirm defendant's conviction for possession of a firearm that had been defaced. We further direct that the Model Jury Charge Committee correct its instruction for the offense of possession of a defaced

firearm and reexamine the model charges for offenses under *N.J.S.A.* 2C:39–3's other subsections to ensure that the model charges are consistent with this opinion.

## IV.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER, and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.