YANNOTTI, P.J.A.D.
*147 Plaintiff Anthony Y. Kite appeals from a judgment entered by the Tax Court, granting summary judgment in favor of defendant Director, Division of Taxation (Division), and denying plaintiff's *148 motion for summary judgment. The court upheld the Division's assessment of additional taxes, penalties, and interest pursuant to the New Jersey Gross Income Tax Act (the Act), N.J.S.A. 54A:1-1 to 10-12. The court's opinion is published at *727 Kite v. Dir., Div. of Taxation, 29 N.J. Tax 75 (2016). We affirm.
I.
The relevant facts are undisputed. In 2004, while performing certain financial consulting services, plaintiff discovered what he believed to be a pattern of fraudulent practices by certain hospitals. According to plaintiff, these hospitals were submitting false claims to the United States government under the Medicare program by inflating charges for routine procedures by as much as four hundred percent. After conducting further research, plaintiff concluded that he had sufficient evidence to substantiate his belief that the hospitals were engaging in fraudulent billing practices, which had resulted in millions of dollars of Medicare overpayments.
Plaintiff retained a law firm to file a qui tam action on behalf of the United States, pursuant to a provision of the False Claims Act (FCA), 31 U.S.C. § 3730(b). The FCA requires a qui tam plaintiff to file his or her complaint in camera and serve the federal government with a copy along with substantially all of the material evidence and information that supports the claim. 31 U.S.C. § 3730(b)(2). A qui tam plaintiff is generally referred to as the "relator." See U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr., 495 F.3d 103, 109 (3d Cir. 2007).
The FCA provides that the federal government has sixty days in which to decide whether to proceed with the action. 31 U.S.C. § 3730(b)(4)(A). If the federal government chooses to do so, it takes control of the lawsuit, but the person who brought the action remains a party and is entitled to receive a portion of the amount recovered. 31 U.S.C. § 3730(d)(1). Under the FCA, the person who brought the action is entitled to receive at least fifteen percent, but not more than twenty-five percent, of the proceeds of *149 the action or settlement of the claim, "depending upon the extent to which the person substantially contributed to the prosecution of the action." Ibid.
Plaintiff commenced his qui tam action in June 2005, by filing a complaint in the United States District Court for the District of New Jersey. As required by the FCA, the complaint was filed under seal and served upon the federal government. Thereafter, the government elected to proceed with the action. When the complaint was unsealed, plaintiff learned that private parties had filed two other qui tam actions under the FCA, and the complaints in those cases included claims against many of the same hospitals that were defendants in plaintiff's action.
In 2006, plaintiff and the relators in the other actions entered into a "Relators' Joint Prosecution and Sharing Agreement." In that agreement, plaintiff and the other relators agreed to work together to successfully prosecute their respective actions against the hospitals. They also agreed to share "all monies that [were] awarded as relator's share awards as a result of [the] claims" asserted in the complaints. The relators' agreement provides in pertinent part that
[u]pon receipt by any one law firm of any or all settlement proceeds from the United States, the proceeds shall be placed in a trust escrow account maintained by the recipient law firm for the benefit of its [r]elator or [r]elators pursuant to the Rules of Professional Conduct in the state in which the escrow account is located.
The relators' agreement further provides for the allocation of the settlement proceeds of the qui tam actions.
In 2008, plaintiff and the other parties in his qui tam action executed agreements resolving claims asserted against three hospitals. Each agreement set forth the *728 amount the hospital would pay to the United States, and the amount the United States would pay to plaintiff "through his legal counsel" as his share of the amounts recovered. Pursuant to these agreements, the defendant hospitals paid the United States $7.5 million, and plaintiff's share of the recovery was $1,229,255. *150 The federal government paid that amount to plaintiff's attorneys, and they withheld $368,776.50 as their agreed-upon contingency fee. Plaintiff's attorneys also distributed $307,313.75 to the other relators, pursuant to the "Relators' Joint Prosecution and Sharing Agreement." The attorneys distributed the remaining $553,164.75 to plaintiff.
The Internal Revenue Service (IRS) issued a 1009-Misc form to plaintiff for the 2008 tax year showing income of $1,229,255, the amount he received from his qui tam action. Plaintiff reported that amount as "other income" on his federal income tax form 1040 for 2008. For federal income tax purposes, the fees that plaintiff paid to his attorneys for prosecuting the qui tam action were deductible from his taxable income.
Plaintiff did not, however, report the $1,229,255 recovery as income on his 2008 New Jersey gross income tax return. In January 2012, the Division of Taxation issued a notice of tax deficiency to plaintiff. In the notice, the Division informed plaintiff that the $1,229,255 recovered from the qui tam action was taxable income because it was a "prize or award" under N.J.S.A. 54A:5-1(1).
As a result of the resulting increase in plaintiff's taxable income, the Division increased the amount of plaintiff's property tax deduction. The Division also adjusted the return to add plaintiff's gambling winnings as taxable income. The Division did not, however, allow plaintiff to deduct the fees he paid to his attorneys for the qui tam action, or the amounts he paid to the other relators pursuant to the "Joint Prosecution and Sharing Agreement." The Division therefore assessed plaintiff $118,882.52, which represented the additional gross income tax of $95,517.19, penalties, and interest.
Plaintiff filed a protest with the Division and requested an administrative conference. The conference took place on October 23, 2012. Thereafter, the Division issued a final decision in the matter, upholding the assessment of additional taxes, penalties, *151 and interest. With interest calculated to December 15, 2012, the assessment totaled $124,476.
Thereafter, plaintiff filed a complaint in the Tax Court challenging the Division's final determination. The court later granted the Director's motion for summary judgment on the inclusion of plaintiff's gambling winnings in his taxable income, which plaintiff did not oppose.
Thereafter, the parties filed cross motions for summary judgment on the remaining issues pertaining to the assessment. Plaintiff argued that the amount he recovered in the qui tam action was not subject to New Jersey gross income tax. Alternatively, he argued that if the recovery is subject to taxation, he is entitled to deductions for the fees he paid to his attorneys and the amounts paid to the *729 other relators pursuant to the sharing agreement.
After hearing oral argument, Judge Patrick DeAlmeida filed an opinion in which he found that the amount plaintiff recovered from the qui tam action constituted an "award" under N.J.S.A. 54A:5-1(1) and therefore was properly included as taxable gross income. Kite, 29 N.J. Tax at 85-86. The judge also determined that the fees plaintiff paid to his attorneys to prosecute the action and the amounts paid to the other relators were not deductible. Id. at 86.
The judge therefore entered an order granting the Division's motion for summary judgment and denying plaintiff's motion for summary judgment. Id. at 90. This appeal followed.
II.
On appeal, plaintiff argues that the Tax Court erred by upholding the Division's deficiency assessment. He contends the funds he received as a relator's share for prosecuting his claim under the FCA are not taxable under the Act. Plaintiff contends his recovery does not meet the definition of a "prize or award" under N.J.S.A. 54A:5-1(1), and therefore does not constitute taxable gross income. He further argues that if the recovery is subject to taxation, the Division should have permitted him to deduct the fees he paid *152 to his attorneys for prosecuting the action and the amounts paid to the other relators pursuant to the sharing agreement.
We note initially that the trial court shall grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199, 129 A.3d 1069 (2016) (quoting R. 4:46-2(c) ). We apply the same standard when reviewing an order granting or denying a motion for summary judgment. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479, 139 A.3d 57 (2016) (citing Bhagat v. Bhagat, 217 N.J. 22, 38, 84 A.3d 583 (2014) ).
Here, there is no dispute as to the material facts, and the issue on appeal is whether the trial court correctly determined as a matter of law that plaintiff's recovery from the qui tam action is subject to taxation under the Act, and if so, whether plaintiff should have been permitted to deduct his attorneys' fees and the monies paid to other relators from the amount of the recovery. In considering those issues, we owe no special deference to the trial court's legal determinations. Templo Fuente, 224 N.J. at 199, 129 A.3d 1069 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ).
III.
We turn first to plaintiff's contention that the amounts he received from the proceeds of the qui tam litigation are not subject to taxation under the Act. He contends the recovery is not taxable income because it is neither a "prize" nor an "award" under N.J.S.A. 54A:5-1(1). We disagree.
In interpreting a statute, "we must identify and implement the legislative intent." Smith v. Millville Rescue Squad, 225 N.J. 373, 389, 139 A.3d 1 (2016) (quoting State v. Smith, 197 N.J. 325, 332, 963 A.2d 281 (2009) ). In doing so, we first consider the plain language of the statute, which is "the best indicator of that *153 intent[.]" Ibid. (alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) ).
We must interpret language of a statute "in accordance with its ordinary and common-sense meaning." Id. at 389-90, 139 A.3d 1 (quoting Saccone v. Bd. of Trs. of the Police & Firemen's Ret. Sys., 219 N.J. 369, 380, 98 A.3d 1158 (2014) ). We also must read the statute "in context with related provisions so as to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492, 874 A.2d 1039 (citing *730 Chasin v. Montclair State Univ., 159 N.J. 418, 426-27, 732 A.2d 457 (1999) ).
N.J.S.A. 54A:5-1 defines New Jersey gross income and identifies various categories of taxable income, which include "[a]mounts received as prizes and awards." N.J.S.A. 54A:5-1(1). Here, Judge DeAlmeida correctly determined that the term "award" in N.J.S.A. 54A:5-1(1) is commonly understood to include the monies a person receives as damages in a lawsuit. Kite, 29 N.J. Tax at 83. The judge's conclusion is supported by dictionary definitions of the word "award," which are indicative of the ordinary meanings of the word.
As a noun, "award" means "a decision, as by a judge or arbitrator" and "something that is awarded; [such as a] prize." Webster's New World College Dictionary 95 (3d ed. 1997). Furthermore, as a verb, "award" means "to give by the decision of a law court or arbitrator [the plaintiff was awarded damages]" and "to give as the result of judging the relative merits of those in competition; grant [to award a prize for the best essay]." Ibid. (alterations in original). See also Webster's Third New International Dictionary 152 (1981) (defining "award" to mean, among other things, "to give by judicial decree").
Judge DeAlmeida noted that N.J.S.A. 54A:6-6(b) also supports the conclusion that monies a person receives as damages in a lawsuit are taxable gross income. Kite, 29 N.J. Tax at 84. That statute excludes from gross income "the amount of damages received, whether by suit or agreement, on account of personal *154 injuries or sickness." N.J.S.A. 54A:6-6(b). Thus, the exclusion indicates that the Legislature intended that other monies recovered as damages in a lawsuit or settlement, such as damages in a qui tam action under the FCA, would be considered an "award" and gross income under the Act. Kite, 29 N.J. Tax at 84.
The judge also noted that the FCA expressly refers to the amounts a person receives from the proceeds of a qui tam action or settlement as an "[a]ward." Kite, 29 N.J. Tax at 83 (citing 31 U.S.C. § 3730(d) ). In addition, in their sharing agreement, plaintiff and the other relators referred to the monies awarded in their respective qui tam actions as "awards."
Plaintiff argues, however, that his recovery in the qui tam action is not a taxable "prize or award" under N.J.S.A. 54A:5-1(1). In support of this argument, plaintiff cites certain other dictionary definitions of the words "prize" and "award." Based on those definitions, plaintiff argues that a "prize" is something offered in a competition or contest of chance, and an "award" is something that is conferred or bestowed especially on the basis of merit or need.
We are convinced, however, that plaintiff's interpretation of the word "award" is unduly narrow and, as we have explained, inconsistent with the ordinary meanings of that word. In any event, the dictionary definitions that plaintiff selected do not support his interpretation of N.J.S.A. 54A:5-1(1). Rather, those definitions support the Tax Court's interpretation of the statute.
Here, plaintiff claims the federal government's recovery in his qui tam action was due, in part, to his skill at identifying and prosecuting the claims. Thus, according to plaintiff, his recovery in the qui tam action was based on the merit of the claims presented in that action. Ibid. As the judge commented, "even if the court were to look to the dictionary definitions upon which plaintiff relies, [the] conclusion would be the same." Kite, 29 N.J. Tax at 85-86.
We therefore conclude the Tax Court correctly found that the Division's interpretation of the term "award" in *155 N.J.S.A. 54A:5-1(1) is reasonable and consistent *731 with the plain meanings of the words used in the statute. The court correctly determined that an "award" includes the proceeds plaintiff received for prosecuting the qui tam action.
IV.
Plaintiff further argues that if the monies he received from the recovery in the qui tam action are an "award" under N.J.S.A. 54A:5-1(1) and considered to be gross income under the Act, the Division should have permitted him to deduct his expenses in obtaining the award, specifically the fees paid to his attorneys to prosecute the action. He also argues that the Division should have allowed him to deduct the amounts paid to the other relators. Neither argument has merit.
Here, the judge noted that the federal government paid the entire $1,229,225 to plaintiff's attorneys and those funds were deposited in the firm's trust account. Kite, 29 N.J. Tax at 86-87. The judge found that thereafter, plaintiff paid his attorneys $386,776.50 from the trust account pursuant to the retainer agreement, and a share of the proceeds to the other relators pursuant to their sharing agreement. Id. at 87.
The judge determined that these payments were made after the federal government had disbursed to plaintiff the full amount of his share of the recovery. Ibid. The judge correctly found that the entire $1,229,225 paid to plaintiff was taxable to him under the Act. Ibid. The judge aptly observed that the tax consequences would be no different if plaintiff had instructed his attorney to pay other debts or obligations from those funds. Ibid.
Plaintiff argues that in the Act, the Legislature only intended to assess the tax upon income after credit was given for the costs and expenses incurred in the generation of the income. The judge noted, however, that sixteen categories of income are identified in the Act as gross income, and only a few of those categories are "net income." See N.J.S.A. 54A:5-1(b) ("[n]et profits from business"); N.J.S.A. 54A:5-1(c) ("[n]et gains or income from disposition *156 of property"); N.J.S.A. 54A:5-1(d) ("[n]et gains or net income from or in the form of rents, royalties, patents, and copyrights"); N.J.S.A. 54A:5-1(h) ("[n]et gains or income derived through estates or trusts"); and N.J.S.A. 54A:5-1(p) ("[n]et pro rata share of S corporation income").
The judge pointed out that the other categories of income, including "awards" under N.J.S.A. 54A:5-1(1), are not defined as "net income." Kite, 29 N.J. Tax at 87-88. The judge therefore determined that the gross amount of plaintiff's recovery was taxable, not the net amount after deductions. Id. at 88. The judge correctly found that plaintiff could not deduct his attorney's fees or the amounts paid to the other relators from his recovery. Ibid.
The judge also correctly found that even though the IRS permitted plaintiff to deduct his attorneys' fees on his federal tax return, this was not controlling. Id. at 89. The Act is distinctly different from the federal income tax law. See Smith v. Dir., Div. of Tax., 108 N.J. 19, 32, 527 A.2d 843 (1987) (noting that our Legislature rejected the federal tax model "in favor of a gross income tax" without the loopholes available under the federal law). The Division properly disallowed the deductions plaintiff was seeking because they are not provided by the Act.
Plaintiff also contends the Tax Court erred by failing to consider public policy concerns and equitable considerations, which he asserts should allow him to deduct his attorneys' fees from his recovery. He contends he provided a benefit to the public by facilitating the repayment of $7.5 million to the federal government due to *732 fraudulent billing, and that his efforts put a stop to the fraudulent billing practices. He contends that if the tax burden is too onerous, individuals will not pursue these claims.
We note that the federal taxation of qui tam awards has not discouraged relators such as plaintiff from pursuing them. In any event, as Judge DeAlmeida determined, these public policy concerns and equitable considerations should be addressed to the representatives of the other branches of government.
*157 Kite, 29 N.J. Tax at 90. The judge observed that it is not the "province of the judiciary to determine public policy." Ibid. The judge noted that whether recoveries in qui tam actions brought under the FCA should be exempt from taxation, in whole or in part, is a question for elected branches of government, not the judiciary. Ibid. We agree.
Affirmed.