THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH STANLEY, Defendant-Appellant.

First District (5th Division)   No. 1—08—1017

Opinion filed December 24, 2009.—Rehearing denied January 20, 2010.

Michael J. Pelletier, Patricia Unsinn, and Stephanie A. Fisher, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Marie Quinlivan Czech, and Anthony L. Kenney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In this case, we consider an apparent matter of first impression in Illinois, whether the proof of the *mens rea* for the possession of defaced weapons necessarily extends to the character of the weapon. Defendant, Kenneth Stanley, was convicted after a bench trial of unlawful use of a weapon, defacing identification marks on a firearm, and aggravated unlawful use of a firearm and sentenced to one year of probation. On appeal he contends: (1) the evidence was insufficient to prove knowledge of the defacement; (2) the evidence was insufficient to demonstrate a modification of the shotgun; (3) the identification evidence was insufficient; and (4) trial counsel was ineffective. As the State concedes the insufficiency of the evidence to prove the shotgun was modified, our review is limited to the remaining contentions. For the reasons that follow, we affirm in part and vacate in part.

## BACKGROUND

Defendant was indicted for unlawful use of a weapon, defacing the identification marks on a firearm, and aggravated unlawful use of a weapon. The charges stemmed from his possession of a shotgun. Defendant waived his right to a jury and proceeded to trial.

Officer Jeffrey Brouder of the Chicago Police Department was the sole witness to testify for the State. On July 2, 2007, shortly before 8 p.m., Brouder and his partner were in uniform on patrol when they received a call regarding a man with a gun at 5752 South Maplewood Avenue in Chicago. The flash message described the offender as "a male black with a red hat, glasses, and a red shirt, waving a shotgun." The officers approached the area from 59th and Maplewood. Seconds later they reached the 5800 block, saw defendant from about six houses away, and recognized him as the individual depicted in the broadcast description.

Brouder observed defendant holding a black object that was approximately two to three feet in length. Defendant was on the sidewalk and about to enter a property through a fence. He then approached the house. Upon reaching the porch, defendant placed the object inside the door of the home. After he stepped into the doorway, defendant was no longer carrying anything. Officer Brouder never lost sight of defendant after his initial observation.

As Brouder and his partner approached the fence surrounding the property, they saw defendant on the porch with two other individuals. Brouder was unable to describe the clothing on the other men, but neither was dressed like defendant. After defendant refused several requests to come down from the porch, the officers entered the

property and detained him. Officer Brouder then looked through the glass door and saw a pistol-grip shotgun leaning up just inside the exterior door. It appeared to be the same item defendant was seen holding on the sidewalk. Defendant was then placed under arrest.

Upon further examination at the police station, Officer Brouder determined the shotgun was loaded with four live rounds. Brouder also observed that its identification marks had been scratched off. Additionally, defendant did not have a firearms owner identification (FOID) card. The weapon was not presented at trial.

The first witness for the defense was Lorenzo Gonzalez, who testified that on the evening in question, he was sitting on the porch talking to his neighbor, Mr. G. Defendant and Jermaine Longs were also talking on the porch next door. Gonzalez had known defendant for approximately 15 years. He had also known Longs from the neighborhood. Both groups of men were talking when another person came down the block and stopped at Longs' gate. That person, whom Gonzalez knew only as Jason, was carrying a brown duffel bag and wearing a red hat, red shirt, and dark shorts. When Jason reached the gate at 5752 South Maplewood, defendant and Longs spoke with him.

Eventually, Jason entered the property and joined defendant and Longs on the porch. Gonzalez could see Jason showing defendant and Longs the contents of the duffel bag, which appeared to be a long black object. Gonzalez was about six feet away at the time, but was able to view the object as he continued talking to Mr. G on the porch next door. Gonzalez saw Jason return the object to the bag and enter the home, while defendant and Longs remained on the porch. About five minutes later, Jason emerged and continued speaking with defendant and Longs.

According to Gonzalez the police then arrived, walked into the yard, and patted down defendant, Jason, and Longs. In turn, one of the officers went into the house and returned carrying a shotgun.

Gonzalez could not specifically recall what defendant was wearing on the night of the incident. He was pretty sure defendant was wearing a white T-shirt because "That's all he wears." However, he also added: "I really don't know because I don't pay attention to men's clothes so I don't know." Likewise, Gonzalez did not know if defendant was wearing a red hat because he was "not trying to look at no dude."

Jermaine Longs testified that he was on his porch when defendant came over to talk to Longs' brother. A man named Jason, who was wearing a red hat, a white T-shirt, and black shorts, approached carrying a duffel bag. According to Longs, defendant was wearing a red shirt and a gray hat. Although Longs could not recall exactly what he was wearing, he thought he wore jean shorts and a hooded sweatshirt.

Jason stopped at Longs' house, entered the yard, and showed defendant the contents of the duffel bag. According to Longs, Jason laid the duffel bag on the porch's banister and showed the shotgun to defendant. Longs then told Jason "to go somewhere with [the shotgun]" and Jason walked into Longs' house. Jason remained in the house for two to three minutes and then returned to the porch. About five minutes later, the police arrived. The officers looked around and asked them all questions. One of the officers entered Longs' house and then exited carrying the shotgun Jason had shown Longs and defendant.

Longs knew neither Jason's last name nor where he lived. However, Longs claimed he had known him for about a year. Jason was not a friend of his, but "just a person I seen." Despite not knowing Jason well, Longs did not stop him when Jason went into Longs' home to hide the shotgun.

Defendant testified that on July 2, 2007, he went to visit his friend Ray Longs. Ray was not there, but defendant sat on the porch talking to Ray's younger brother Jermaine. Thereafter, a younger man named Jason came walking up the street carrying a duffel bag. Defendant first saw Jason from about six or seven houses to the north. Jason approached the Longs' gate and then entered the property. Jason showed defendant the contents of the duffel bag. At first he pulled the shotgun out just enough to reveal the black handle. Defendant told Jason, "Get away from me with that. You hot." Jermaine Longs then told him, " 'Take that shit in the house.' " Jason went into the house for "five minutes at the most" and returned to the porch empty-handed. About two minutes later, the police arrived.

According to defendant, that day he was wearing a gray hat, red shirt, and blue jeans. He was arrested and eventually taken to the Cook County jail. At this point in the testimony, defense counsel attempted to present a writing purporting to be a clothing receipt from the Cook County jail. According to counsel, he received it that morning prior to trial. The State objected to the use of this paper and alleged a violation of the discovery rules. Moreover, the prosecutor described seeing defense counsel with it at counsel table, but he never mentioned it prior to the start of the trial or at any point during the proceedings. During argument, the writing was tendered to the trial judge and briefly reviewed. The prosecutor complained that this was part of a deliberate discovery violation and constituted trial by ambush. In response, defense counsel argued the purported receipt was a "county document," albeit that no designation of "Cook County Department of Corrections" appeared. The trial court found a discovery violation and continued the proceedings to permit the State to investigate the paper and its contents.

When testimony resumed, the writing was shown to defendant. He testified it was a receipt given to him after booking at the Cook County jail. A sustained foundational objection prevented defendant from offering further testimony regarding the contents of the paper. Nevertheless, defendant testified the writing was the same as when it was given to him on July 4, 2007. When defense counsel moved to admit the writing, the State objected on hearsay grounds and counsel failed to lay a proper foundation for it. Defense counsel argued it was not hearsay as it was not being offered for the truth of the matter asserted. The trial court sustained the objection, finding the writing was hearsay, that defendant could not "establish that it is a document kept in the regular course of business by the Cook County Jail" or that it was issued as a receipt. Nonetheless, the court allowed defendant's answers about his receiving the writing to stand.

After each side rested and argument was heard, the trial court found defendant guilty of each of the remaining counts. Specifically, the trial judge stated, "I find the defendant's testimony as well as the witnesses not to be credible. Officer was clear, consistent and convincing." Following denial of defendant's motion for a new trial, he was sentenced to one year of probation.

## ANALYSIS

### Defacing the Identification Marks on a Firearm

Defendant first contends the State did not prove him guilty beyond a reasonable doubt of the offense of defacing the identification marks on a firearm where there was no proof of his knowledge the marks had been scratched off. Alternatively, defendant posits that if the statute does not require proof of a mental state, thereby imposing absolute liability, it is unconstitutional as tending to criminalize innocent conduct without a showing of a culpable mental state. Mindful of the supreme court's mandate, we will endeavor to resolve this challenge on nonconstitutional grounds and only address the constitutional challenge if necessary. See *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 196, 909 N.E.2d 783, 793 (2009) ("cases should be resolved on nonconstitutional grounds whenever possible and constitutional issues should be reached only as a last resort"). Manifestly, it is our duty, wherever reasonable, to interpret statutes in a fashion upholding their validity. *People v. Taylor*, 344 Ill. App. 3d 929, 934, 801 N.E.2d 1005, 1008 (2003). Where the constitutionality of a statute is raised, our review is *de novo*. *Taylor*, 344 Ill. App. 3d at 934, 801 N.E.2d at 1008.

Challenges to the sufficiency of the evidence are evaluated deferentially. *People v. Davison*, 233 Ill. 2d 30, 43, 906 N.E.2d 545, 552-53 (2009). Thus, our inquiry addresses itself solely to " 'whether,

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Davison*, 233 Ill. 2d at 43, 906 N.E.2d at 553, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979). We are not permitted to substitute our judgments for those of the trial court on matters concerning the weight of the evidence or the credibility of the witnesses. *People v. Jackson*, 232 Ill. 2d 246, 280-81, 903 N.E.2d 388, 406 (2009). This standard of review maintains whether the evidence at trial was direct or circumstantial. *Jackson*, 232 Ill. 2d at 281, 903 N.E.2d at 406.

This deferential standard affords " 'full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Jackson*, 232 Ill. 2d at 281, 903 N.E.2d at 406, quoting *Jackson v. Virginia*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. As our supreme court aptly observed in *People v. Hall*:

"The trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." *People v. Hall*, 194 Ill. 2d 305, 330, 743 N.E.2d 521, 536 (2000).

We will not set aside a conviction unless the evidence presented was so unsatisfactory or improbable that a reasonable doubt of defendant's guilt remains. *People v. Brown*, 185 Ill. 2d 229, 247, 705 N.E.2d 809, 817 (1998). Likewise, an unbroken line of precedent holds that "in a bench trial the court is presumed to have relied on proper evidence and disregarded all incompetent evidence in reaching its conclusion." *People v. Janis*, 56 Ill. App. 3d 160, 166, 371 N.E.2d 1063, 1068 (1977).

Here, in resolving defendant's initial claim we must first analyze the underlying statute. Our primary objective when construing statutes is to ascertain the intent of the legislature and give effect to that intent. *People v. Molnar*, 222 Ill. 2d 495, 518, 857 N.E.2d 209, 222 (2006). The best evidence of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 181, 874 N.E.2d 1, 8 (2007).

Statutes must be read as a whole and all relevant parts should be considered (*People v. Reed*, 177 Ill. 2d 389, 393, 686 N.E.2d 584, 586 (1997)), while attending to " 'the evil to be remedied and the object to be attained' " (*People v. Ivy*, 133 Ill. App. 3d 647, 653, 479 N.E.2d 399, 403 (1985), quoting *People v. Bratcher*, 63 Ill. 2d 534, 543, 349 N.E.2d

32, 35 (1976)). Established precedent instructs that we are not to depart from the language of the statute by interjecting exceptions, limitations, or conditions tending to contravene the purpose of the enactment. *People v. Martinez*, 184 Ill. 2d 547, 550, 705 N.E.2d 65, 66 (1998). Our review of matters of statutory interpretation is also *de novo*. *Molnar*, 222 Ill. 2d at 519, 857 N.E.2d at 223.

■ ■ Section 24—5(b) of the Criminal Code of 1961 (Code) provides:

"A person who possesses any firearm upon which any such importer's or manufacturer's serial number has been changed, altered, removed or obliterated commits a Class 3 felony." 720 ILCS 5/24—5(b) (West 2006).

Although the enactment is clearly lacking any *mens rea*, the legislature has provided a guideline for instances where the mental state is unstated. See 720 ILCS 5/4—3 (West 2006). Likewise, this section offers guidance for the determination whether an offense is an "absolute liability" offense. 720 ILCS 5/4—3(a) (West 2006). As section 4—3 of the Code bears significantly upon our analysis, we set it out *in haec verba*:

"(a) A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7.

(b) If the statute defining an offense prescribed a particular mental state with respect to the offense as a whole, without distinguishing among the elements thereof, the prescribed mental state applies to each such element. If the statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in sections 4—4 [Intent], 4—5 [Knowledge] or 4—6 [Recklessness] is applicable.

(c) Knowledge that certain conduct constitutes an offense, or knowledge of the existence, meaning, or application of the statute defining an offense, is not an element of the offense unless the statute clearly defines it as such." 720 ILCS 5/4—3 (West 2006).

■ Section 4—9 of the Code, "Absolute Liability," provides further guidance:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor *** or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4—9 (West 2006).

The Committee Comments on section 4—9 further emphasize the intent of the legislature:

"This section is intended to establish, as an expression of general legislative intent, rather strict limitations upon the interpretation that mental state is not an element of an offense, although the express language of the provision defining the offense fails to describe such an element. ***

\* \* \*

In addition to permitting a construction requiring absolute liability in offenses punishable by incarceration or by a fine of not more than $500, the second part of section 4—9 expresses the policy that in other offenses not including a mental state in the definition *only a clearly indicated legislative intent to create absolute liability should be recognized,* and in all other instances, a mental-state requirement should be implied as an application of the general rule that an offense consists of an act accompanied by a culpable mental state, as expressed in Section 4—3. [Citations.]" (Emphasis added.) 720 ILCS Ann. 5/4—9, Committee Comments—1961, at 218-20 (Smith-Hurd 2002).

In determining the proper mental state governing alleged violations of section 24—5(b), our inquiry commences with the statute itself. See *Ultsch,* 226 Ill. 2d at 181, 874 N.E.2d at 8. Section 24—5 is entitled, "Defacing identification marks on a firearm." Subsection (a) criminalizes the changing, alteration or obliteration of the serial numbers placed on a firearm by the manufacturer or importer. 720 ILCS 5/24—5(a) (West 2006). The mental state applicable to subsection (a) is phrased in the alternative, as follows:

"Any person who shall *knowingly or intentionally* change, alter, remove or obliterate the name of the importer's or manufacturer's serial number of any firearm commits a Class 2 felony." (Emphasis added.) 720 ILCS 5/24—5(a) (West 2006).

Possession of a defaced firearm is a Class 3 felony. 720 ILCS 5/24—5(b) (West 2006). As noted in *People v. Sevilla,* "the degree of punishment is a significant factor to consider in determining whether a statute creates an absolute liability offense." *People v. Sevilla,* 132 Ill. 2d 113, 122, 547 N.E.2d 117, 121 (1989). Our supreme court in *Sevilla* observed the inverse proportionality of the likelihood the legislature intended to craft an absolute liability offense and the significance of the punishment. *Sevilla,* 132 Ill. 2d at 122, 547 N.E.2d at 121; see also *People v. Valley Steel Products Co.,* 71 Ill. 2d 408, 425, 375 N.E.2d 1297, 1305 (1978) ("It would be unthinkable to subject a person to a long term of imprisonment for an offense he might commit unknowingly").

■ Notably, section 24—5(b) is unmistakably a possessory offense. 720 ILCS 5/24—5(b) (West 2006). Moreover, a review of the statute persuades us that the legislature did not intend to create an absolute liability offense for the possession of a defaced firearm. Section 24—5(b) contains no explicit statement of such an intent on the part of the legislature. Nor can we find any support for such an intent in the case law. Rather, we conclude that the State could establish the elements of this offense by proof of either a knowing or intentional mental state on the part of the accused. See 720 ILCS 5/4—3(b) (West 2006). In the instant case, we find the State's allegation that defendant "knowingly possessed" the firearm met this requirement.

We must next determine how the mental state applicable to the offense relates to its elements. That is to say, whether the knowing mental state applies to the possession of the defaced firearm or knowledge of the defacement. Unfortunately, our research reveals a dearth of Illinois cases on this point nor have the parties presented any relevant authorities offering meaningful support for their positions. Although the question presents a matter of first impression, analogies can be drawn from other Illinois cases, as well as decisions from other jurisdictions.

In *People v. Ivy*, the defendant appealed her conviction for possession of a sawed-off shotgun. There, the defendant argued the State failed to prove she knowingly possessed an illegal firearm as there was lacking any proof she "was aware of the illegal status and character of the sawed-off shotgun." *Ivy*, 133 Ill. App. 3d at 652, 479 N.E.2d at 402-03. Ivy did not dispute the proof of the nature of the firearm or that she possessed it. Instead, she argued the State had to prove she knowingly possessed it while simultaneously knowing "its illegal status and character." *Ivy*, 133 Ill. App. 3d at 652, 479 N.E.2d at 403.

According to the *Ivy* court:

"[B]ecause of the inherently dangerous nature of sawed-off shotguns and their illegal status *per se*, we do not believe the legislature intended that the unlawfulness of the defendant's possession here should depend upon her familiarity or lack of familiarity with the characteristics of the gun she possessed. Rather, it was sufficient for the defendant's conviction that she have knowledge that she possessed the gun in question, which, because of its dangerous capacity, was the subject of legislative enactment." *Ivy*, 133 Ill. App. 3d at 653, 479 N.E.2d at 403-04.

The court in *Ivy* concluded that the defendant's actions indicated she knowingly possessed the shotgun and was likewise aware of "its dangerous potential" and, therefore, the *mens rea* element was sufficiently proven. *Ivy*, 133 Ill. App. 3d at 654, 479 N.E.2d at 404; see

also *People v. Wright*, 140 Ill. App. 3d 576, 582, 488 N.E.2d 1344, 1348 (1986) (State not required to prove defendant knew the length of the gun's barrel to support conviction).

Additional support for our interpretation may be found in a recent Supreme Court of New Jersey opinion entitled *State v. Smith*, 197 N.J. 325, 963 A.2d 281 (2009). There, following a jury trial, the defendant was convicted of possession of a defaced firearm. *Smith*, 197 N.J. at 327-29, 963 A.2d at 282-84. An intermediate appellate court affirmed the conviction, holding that pursuant to the New Jersey statute, "knowingly possessing a weapon that happens to be defaced is sufficient for conviction." *Smith*, 197 N.J. at 329, 963 A.2d at 284. In turn, the supreme court undertook the interpretation of what was modified by the word " 'knowingly' " in the New Jersey Code of Criminal Justice (N.J. Stat. Ann. §2C:39—3(d) (West 2002)). That statute provided:

> "Any person who knowingly has in his possession any firearm which has been defaced, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree." N.J. Stat. Ann. §2C:39—3(d) (West 2002).

In response to the defendant's contention that "knowingly" applied to the possession as well as the character—*i.e.* the defaced nature—of the gun, the New Jersey court observed that this interpretation would require the knowing mental state to be read into the statute. Moreover, the court noted that it is not the place of the judiciary to read words into the statute or presume an intent by the legislature other than that reflected by the plain language of the enactment. *Smith*, 197 N.J. at 332, 963 A.2d at 285. After conducting a thorough survey of the language of the statute, related statutes, and the legislative history, the court announced its conclusion: "[W]e hold that the term 'knowingly' in N.J.S.A. 2C:39—3(d) modifies 'possession' of a firearm which has been defaced. The State was not required to prove that, at the time that he knowingly possessed the firearm, defendant also knew that it was defaced." *Smith*, 197 N.J. at 338, 963 A.2d at 289.

In adherence to the rationale of *Ivy* and *Smith*, we determine that the *mens rea* applicable to the charge against defendant is knowledge. Morever, the knowledge required applies only to the possessory component of the offense. Our interpretation is in conformance with the legislature's recognition of the dangerousness posed by defaced weapons. Thus, we perceive that the mere possession of such weapons is the evil sought to be remedied by this offense to, *inter alia*, deter the possession of altered weapons. See *Ivy*, 133 Ill. App. 3d at 653, 479 N.E.2d at 403.

We recognize that it could be contended that there is an inconsistency between our holding and the language of section 4—3(b) of the Code. However, we find that no such inconsistency exists. Section 4—3(b) provides, in part: "If the statute defining an offense prescribed a particular mental state with respect to the offense as a whole, without distinguishing among the elements thereof, the prescribed mental state applies to each such element." 720 ILCS 5/4—3(b) (West 2006). While this could arguably be read to require proof defendant knew of the nature of the defaced firearm, we find that is not, in fact, the case. Instead, we discern that the elements of this offense are properly the *mens rea* and the possession, that is, the State must prove the knowing possession of the defaced firearm by defendant. The State, however, need not prove knowledge of the character of the firearm. Though the defacement unmistakably bears upon the commission of the offense, it is not an element of the offense. We find support for this interpretation in the Committee Comments to section 4—9, explaining that: "[A] mental-state requirement should be implied as an application of the general rule that an offense consists of an act accompanied by a culpable mental state, as expressed in 4—3. [Citations]." 720 ILCS Ann. 5/4—9, Committee Comments—1961, at 220 (Smith-Hurd 2002).

In the present case, defendant was seen by Officer Brouder carrying the defaced shotgun. Defendant was also observed proceeding toward the home at 5752 South Maplewood and placing the object inside the door of the home, where it was later seen and recovered by Officer Brouder. Importantly, "Where possession has been shown, an inference of guilty knowledge can be drawn from the surrounding facts and circumstances." *People v. Schmalz*, 194 Ill. 2d 75, 82, 740 N.E.2d 775, 779 (2000); *People v. Abdullah*, 220 Ill. App. 3d 687, 691, 581 N.E.2d 67, 70 (1991). Here, the surrounding facts and circumstances convince us of the correctness of drawing a guilty inference as to defendant's knowledge of the weapon and its unlawful character. See *People v. Esposito*, 18 Ill. 2d 104, 107, 163 N.E.2d 487, 489 (1959) (defendant found to have "possessed [burglary] tools with knowledge of their character" where they were found in the locked trunk of defendant's car and were "readily identified" as items belonging to an unnamed companion).

As the court observed in *Abdullah*:

"Where possession has been shown, an inference of defendant's knowledge can be drawn from the surrounding facts and circumstances. [Citation.] A defendant may attempt to rebut the inference of guilty knowledge which arises from the possession of a stolen vehicle, but the defendant must offer a reasonable story or be

judged by its improbabilities. [Citation.] However, the trier of fact is not required to accept defendant's version of the facts. [Citations.]" *Abdullah*, 220 Ill. App. 3d at 691, 581 N.E.2d at 70.

In the case *sub judice*, defendant called other witnesses and testified in an effort to rebut the State's proof and any inferences to be drawn from it. However, the story offered does not rebut Officer Brouder's testimony in any meaningful way. Instead, defendant and his witnesses offered a version of events involving an apparently relative stranger named Jason, who was known from around the neighborhood, but whose surname was unknown to any of the witnesses. See *People v. Bailey*, 265 Ill. App. 3d 262, 271, 638 N.E.2d 192, 198 (1994) ("It is, however, the reviewing court's prerogative to disbelieve a witness where his testimony in the record is inherently incredible").

This testimony, when considered in light of Officer Brouder's testimony, was plainly not worthy of belief. Therefore, we conclude the evidence was sufficient to demonstrate defendant's knowing possession of the firearm as well as its unlawful nature. In light of our conclusion as to the construction of the statute, defendant's constitutional challenge is without merit and does not warrant further discussion. See *Taylor*, 344 Ill. App. 3d at 934, 801 N.E.2d at 1008.

## Sufficiency of the Identification Evidence

Next, defendant contends the State's identification testimony was insufficient to prove defendant was correctly identified as the possessor of the firearm. The sole witness for the State was Officer Brouder. According to Brouder's testimony, he responded to a call of a man with a gun, including a description of the individual. On arriving in the area and from about six houses away, Brouder observed the defendant carrying a long black object. As Brouder and his partner closed in on defendant, he entered the property at 5752 South Maplewood through the wrought iron fence. He was then observed placing the object inside the door of that home. Brouder was unequivocal about never having lost sight of defendant from the point of first observing him.

As this issue is one of the sufficiency of the evidence, we must determine whether, when viewed in the light most favorable to the State, a rational trier of fact could have found there was proof of each element beyond a reasonable doubt. *Davison*, 233 Ill. 2d at 43, 906 N.E.2d at 553, quoting *Jackson v. Virginia*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2788-89. It follows, then, that the State must prove the identity of the offender beyond a reasonable doubt. *People v. Lewis*, 165 Ill. 2d 305, 356, 651 N.E.2d 72, 96 (1995). Vague or doubtful identification testimony is patently insufficient to meet that

quantum of proof. *Lewis*, 165 Ill. 2d at 356, 651 N.E.2d at 96. Yet, positive testimony from a single, credible witness is sufficient to support a conviction. *People v. Smith*, 185 Ill. 2d 532, 541, 708 N.E.2d 365, 369 (1999).

■ The assessment of identification testimony is now customarily conducted by application of the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972), and adopted in Illinois. See *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319 (1989). These factors are:

"(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." *Lewis*, 165 Ill. 2d at 356, 651 N.E.2d at 96, citing *Slim*, 127 Ill. 2d at 307-08, 537 N.E.2d at 319.

■ Importantly, in the present case the identification witness was a responding police officer and not a victim or civilian witness. Nevertheless, Officer Brouder's testimony indicated he had a significant opportunity to view defendant and watch him approach the scene of the arrest. Likewise, Officer Brouder offered uncontradicted testimony of his degree of attention. Specifically, he noted that he never lost sight of defendant. Given the fact Brouder was responding to a call in his capacity as a police officer, we conclude his degree of attention was high and, in all likelihood, greater than that of an average citizen witnessing a crime or being victimized by a crime.

Here, there was no prior identification by Officer Brouder, which makes that factor inapplicable to his identification. Furthermore, Officer Brouder's testimony and in-court identification of defendant was certain and not called into question at any point. Lastly, the identification of defendant was based on an on-view arrest of defendant. Consequently, there was no lapse between the offense and the identification of defendant. Review of these factors convinces us of the reliability of Officer Brouder's identification of defendant.

On appeal defendant emphasizes the fact that Officer Brouder could not see defendant's face upon first viewing him from down the street. Likewise, defendant argues, ostensibly urging us to find Officer Brouder's identification was confused, that the presence of other men on the porch and the fact that Brouder and defendant had never met before calls into question the reliability of the identification. We disagree. Mindful of the facts noted herein, along with the trial court's explicit assessment of the testimony of Officer Brouder, we believe the identification of defendant was sufficient to support that element of

the offense of conviction. Since our task here is to consider the evidence presented in the light most favorable to the State (*Davison*, 233 Ill. 2d at 43, 906 N.E.2d at 553), the discrepancies between and among the testimony of the witnesses, including defendant, do not rise to the level of a reasonable doubt of defendant's guilt (*Brown*, 185 Ill. 2d at 247, 705 N.E.2d at 817).

## Ineffective Assistance of Counsel

In his final claim of error, defendant contends trial counsel rendered constitutionally ineffective assistance by failing to lay the proper foundation for the admission of a clothing receipt from the Cook County jail. As noted, during defendant's testimony trial counsel attempted to utilize the purported receipt as an exhibit. Following the State's objection, the trial judge found defense counsel's failure to tender the receipt to the State was a discovery violation. As a cure for the violation, the State was granted a continuance of the trial so the receipt could be investigated. When the trial resumed, the State again objected to the use of the receipt and its admission into evidence. The trial court refused to admit the receipt, but allowed defendant's testimony about the receipt to stand.

Determining whether defense counsel provided ineffective assistance involves a bifurcated standard of review, wherein we defer to the trial court's findings of fact unless they are against the manifest weight of the evidence, but make a *de novo* assessment of the ultimate legal issue of whether counsel's actions support an ineffective assistance claim. *People v. Berrier*, 362 Ill. App. 3d 1153, 1166-67, 841 N.E.2d 1117, 1128-29 (2006); *People v. Davis*, 353 Ill. App. 3d 790, 794, 819 N.E.2d 1195, 1200 (2004). As we discern the facts surrounding this claim are not disputed, we review defendant's contention *de novo*. *Berrier*, 362 Ill. App. 3d at 1167, 841 N.E.2d at 1129.

Claims of ineffective assistance of counsel are evaluated against the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984). Defendants must show counsel's performance fell below an objective standard of reasonableness, thereby giving rise to a reasonable probability of prejudice. *People v. Villarreal*, 198 Ill. 2d 209, 228, 761 N.E.2d 1175, 1185 (2001). Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Erickson*, 183 Ill. 2d 213, 224, 700 N.E.2d 1027, 1032 (1998). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

The failure to establish either deficient performance or prejudice dooms an ineffectiveness claim. *People v. Palmer*, 162 Ill. 2d 465, 475-76, 643 N.E.2d 797, 801 (1994). Manifestly, ineffectiveness claims can be solely on the prejudice component, without establishing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Judging of counsel's performance is done in a "highly deferential" fashion and courts strive to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. In constitutional terms, effective assistance amounts to competent, not necessarily perfect, representation. *People v. Johnson*, 372 Ill. App. 3d 772, 778, 867 N.E.2d 49, 54 (2007). There is a strong presumption counsel's performance fell within the spectrum of reasonable professional assistance. *People v. Cunningham*, 376 Ill. App. 3d 298, 301-02, 875 N.E.2d 1136, 1140-41 (2007). Furthermore, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *Palmer*, 162 Ill. 2d at 476, 643 N.E.2d at 802; *People v. Fuller*, 205 Ill. 2d 308, 330-31, 793 N.E.2d 526, 541-42 (2002) (issues of trial strategy must be viewed, not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions). Specifically, the decision whether to call a particular witness is a matter of trial strategy and typically will not support a claim of ineffectiveness. *People v. Patterson*, 217 Ill. 2d 407, 442, 841 N.E.2d 889, 909 (2005).

■ In the present case, we discern that defendant cannot establish prejudice by virtue of trial counsel's failure to call a foundational witness. The receipt, if admitted into evidence, would apparently have offered a list of the clothing inventoried from defendant upon his processing at the county jail. As noted, this exhibit is not reproduced in the record in any form. The potential value or import of this evidence apparently would have been to contradict the testimony of Officer Brouder's identification, observations, and response to the initial flash message. However, defendant's testimony, as well as the equivocal testimony of Gonzalez and Longs, served that same purpose. As such, the contents of the purported receipt would have been cumulative of the testimony already offered on defendant's behalf.

By accepting the testimony of defendant concerning his receipt of the item, it would appear the trial court recognized the import of the writing. After all, the trial judge had two opportunities to view the writing. Nevertheless, defendant himself testified about his dress on

the day of his arrest, which contradicted Officer Brouder's testimony. We fail to see how the tendering of a foundational witness for a document containing information cumulative of the defense's evidence was prejudicial to defendant.

Although the continuance was granted for the State to investigate the purported receipt, the door was likewise opened for defense counsel to further investigate the document and even potentially subpoena a foundational or corroborating witness. That defense counsel returned from the continuance with no further input on the matter is noteworthy. While the record does not illuminate this point, further investigation of the purported receipt, which counsel claimed to have received from his client on the morning of the trial, may have engendered doubts about its validity or ability to be verified. Regardless of counsel's motives, the decision to call witnesses belonged to counsel and is properly a matter of trial strategy. *Patterson*, 217 Ill. 2d at 442, 841 N.E.2d at 909. Consequently, even if defense counsel's performance was deficient, which we do not pass on here, the decision not to call such a witness was not prejudicial. See *Patterson*, 217 Ill. 2d at 442, 841 N.E.2d at 909. Therefore, defendant was not denied the effective assistance of counsel at trial.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, but vacate defendant's conviction for possession of a modified shotgun.

Affirmed in part and vacated in part.

TULLY and HOWSE, JJ., concur.