In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2162

NATHAN NISSENBAUM,

*Petitioner-Appellant,*

*v.*

CHAD JENNINGS,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 22 C 7159 — **Matthew F. Kennelly**, *Judge.*

ARGUED MAY 15, 2025 — DECIDED AUGUST 5, 2025

Before RIPPLE, KIRSCH, and KOLAR, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Nathan Nissenbaum was convicted at trial in Illinois state court and sentenced to 14 years' imprisonment for aggravated criminal sexual assault, home invasion, aggravated kidnapping, and aggravated domestic battery. In a post-trial motion, Nissenbaum alleged ineffective assistance of counsel, claiming that his attorney failed to properly advise him with respect to the potential mandatory minimum sentence he faced and his realistic chances of

prevailing at trial. If he had been adequately advised, Nissenbaum claimed, he would have accepted a plea deal for a lesser sentence. At the close of a three-day evidentiary hearing, the trial court found that Nissenbaum failed to show ineffective assistance of counsel, and the Illinois appellate court affirmed.

After exhausting the state court appellate process, Nissenbaum filed a habeas petition in federal district court under 28 U.S.C. § 2254 in which he renewed his ineffective assistance claims. The district court denied the petition, concluding that the Illinois appellate court did not unreasonably apply federal law in finding that Nissenbaum failed to show that he was prejudiced by his counsel's alleged deficient performance. We agree and affirm.

I

A

Nathan Nissenbaum was arrested and ultimately convicted for beating and sexually assaulting a former girlfriend. Nissenbaum and the victim, D.K., dated from December 2013 until November 2014. In January 2015, D.K. sought and received an emergency order of protection against Nissenbaum and, shortly thereafter, a mutual no-contact order was imposed. The following month, D.K., who worked as an escort, received and accepted an online booking request from a new client. Unbeknownst to D.K., the client was Nissenbaum, who had booked the appointment under a false name.

Nissenbaum arrived at D.K.'s apartment at the appointed time in disguise. D.K. says that Nissenbaum forced her to the bed, handcuffed her, and held a gun to her head, threatening to kill her. He then proceeded to duct tape her, strike her face and body, choke her, and rape her. After assaulting D.K.,

Nissenbaum removed the duct tape, announced that he was going to kill himself, and walked into the bathroom. D.K. fled the apartment and immediately called the police. Responding officers found Nissenbaum in D.K.'s bathroom, bleeding from razor blade cuts to his arms. He had also started a small fire in the bathroom.

Police arrested Nissenbaum, and both he and D.K. were transported to the hospital. In the ambulance, Nissenbaum admitted to an officer that he had posed as a john to gain entry to D.K.'s apartment and mentioned that the encounter "didn't go as planned." The nurse who examined D.K. found marks on her forehead, wrists, and shins, as well as a handprint on her back. A sexual assault kit administered to D.K. confirmed the presence of Nissenbaum's DNA.

B

Nissenbaum was tried in state court on seven counts: two counts of aggravated criminal sexual assault and two counts of aggravated kidnapping, as well as one count each of home invasion, aggravated domestic battery, and attempted aggravated arson. Under Illinois law, aggravated criminal sexual assault, home invasion, and aggravated kidnapping are all Class X felonies that carry a minimum sentence of six years. See 720 ILCS 5/11-1.30, 5/19-6, 5/10-2; 730 ILCS 5/5-4.5-25(a). And a conviction for aggravated criminal sexual assault triggers mandatory consecutive sentencing. 730 ILCS 5/5-8-4(d)(2). This means that if convicted on the sexual assault charge and any one of the other Class X offenses, Nissenbaum faced a mandatory consecutive sentence of at least 12 years.

At his bench trial, Nissenbaum relied on a consent defense. He testified that when he and D.K. were dating, they had

regularly engaged in rough sex and consensual "rape play," which sometimes involved him surprising D.K. with a "violent rape sort of situation" when she wasn't expecting it. Nissenbaum admitted to booking the appointment under a false name and wearing a disguise but maintained that it was a consensual encounter and that D.K. had not used their mutual safe word to indicate that she wanted him to stop. He acknowledged showing D.K. a gun—later revealed to be a BB gun—but denied holding it to her head. As for the fire in the bathroom, he claimed to have started it accidentally by knocking over a candle. In the lead up to the trial, it was not clear whether D.K. would cooperate with the prosecution, but she ultimately testified against Nissenbaum. Though D.K. confirmed that the two of them had engaged in various "rape fantasies" when they were dating, she denied that the assault in February was one of these consensual encounters. The court ultimately found Nissenbaum guilty of aggravated criminal sexual assault, home invasion, aggravated kidnapping, and aggravated domestic battery and sentenced him to 14 years' imprisonment.

## C

Nissenbaum was represented by attorney Michelle Truesdale both before and during his bench trial. After his conviction, Nissenbaum retained new counsel and promptly filed a post-trial motion alleging that Truesdale had rendered ineffective assistance of counsel. Specifically, Nissenbaum claimed that Truesdale failed to inform him about the risk of mandatory consecutive sentences before trial, leading him to erroneously believe that he faced only a mandatory minimum of 6—rather than 12—years if convicted on multiple counts. He also claimed that Truesdale did not accurately advise him

with respect to his chances of being acquitted at trial. If not for this deficient performance, Nissenbaum said, he would have accepted a plea deal for a lesser sentence rather than risk a trial. The court accepted briefing from the parties and held a three-day evidentiary hearing to investigate Nissenbaum's claims, during which the following evidence emerged.

Truesdale's representation of Nissenbaum began in early 2015. Over the course of two years, she and Nissenbaum met approximately 15 times and exchanged many emails discussing his case. Truesdale testified that as early as July 2015, she discussed a possible plea to attempted aggravated arson with Assistant State's Attorney (ASA) Mary Innes. Negotiations stalled, however, because Nissenbaum "wanted to work with kids" and "didn't want a felony on his record."

According to Truesdale, she first broached the possibility of consecutive sentencing with Nissenbaum during a December 2016 meeting in which they reviewed a copy of the charging document. Truesdale had placed sticky notes on the document, notating each of the charged offenses with information such as the elements of the offense, sentence ranges, possible defenses, and whether sentences were consecutive. Next to aggravated criminal sexual assault, Truesdale wrote: "X, 6 to 30, + Consec." Nissenbaum acknowledged that he saw the annotated charging document but denied that Truesdale explained consecutive sentencing to him at the meeting.

On March 23, 2017, Truesdale and Nissenbaum met again to discuss his options, including the possibility of reopening talks for a plea deal. Truesdale testified that she and Nissenbaum again discussed the possibility of consecutive sentences (which Nissenbaum denied). After this meeting, Truesdale texted the new ASA assigned to the case, Jennifer Bagby, to

explore a potential plea. Nissenbaum emailed Truesdale before ASA Bagby could respond, reiterating that while she could explore a deal, he was "not ok with being a sex offender" and "not ok with prison time." He emailed Truesdale again the following day to inquire about possibly delaying the trial, remarking, "[i]f there is a chance that anything will give me a shot at moving forward in a world without a felony, [my parents] will support it and pay for it."

On March 24, 2017, ASA Bagby responded to Truesdale's text message and said that she "could probably make an offer on an agg[ravated] domestic battery for probation and an order of protection," noting that "the current administration will have my back on this even though the victim will not be happy." At the evidentiary hearing, ASA Bagby explained that she was eager to resolve the case because it involved serious charges, and it was unclear at that time whether or not D.K. would cooperate. She further clarified that this wasn't an actual offer for Nissenbaum to accept but rather the initiation of a conversation about an offer. On March 28, Truesdale and Nissenbaum met to discuss ASA Bagby's proposal. Truesdale recalled that Nissenbaum remained opposed to pleading to a felony (aggravated domestic battery is a felony) and was inclined to move forward with a trial. Nissenbaum denied this, saying that he just wanted more time to think about the offer, which he thought would remain open until trial. On April 11, after nearly two weeks had passed, ASA Bagby relayed that she had finally met with D.K. and that any plea that did not include a sex offense was now off the table.

The case proceeded to trial that summer. According to Nissenbaum, Truesdale consistently expressed a strong belief that he would be acquitted or convicted of only a minor,

probation-eligible offense. Truesdale, on the other hand, testified that she accurately advised Nissenbaum of the strengths and weaknesses of the state's case and that her assessment of his chances at trial varied over time based on the evidence she thought the state might present and—in particular—whether D.K. would cooperate. Partway through the trial, Nissenbaum sent an email to Truesdale in which he remarked, "I would just like my life back and no[t] find myself in prison for the next 6–30." Upon seeing this email, Truesdale emailed ASA Bagby, asking whether the counts of aggravated criminal sexual assault carried mandatory consecutive sentences. Truesdale later testified that she only reached out to ASA Bagby because she was away from her case file at the time and wanted quick confirmation. After ASA Bagby responded to confirm that the sentences were consecutive, Truesdale replied to Nissenbaum's email, noting that he faced a potential 12 (not 6) year minimum. Nissenbaum says this was the first time he was informed that he was facing a potential minimum sentence of 12 years.

At the close of the evidentiary hearing, the trial court concluded that, despite some ambiguity in the record, Nissenbaum had not shown ineffective assistance of counsel. The court found that, contrary to his assertions, Nissenbaum was reasonably informed of his sentencing situation as well as his chance of prevailing at trial. Moreover, even if Truesdale's performance had been deficient, the court concluded that Nissenbaum would not have been prejudiced because he would have refused to accept a plea regardless. The Illinois appellate court affirmed, finding that Nissenbaum failed to establish that he was prejudiced by any alleged deficiencies in Truesdale's performance. The Illinois Supreme Court denied Nissenbaum's petition for leave to appeal. Having exhausted the

state appellate process, Nissenbaum filed a habeas petition in federal district court under 28 U.S.C. § 2254, claiming a violation of his Sixth Amendment rights. The district court denied his petition, and this appeal followed.

## II

We review a district court's denial of a habeas petition de novo. *Woolley v. Rednour*, 702 F.3d 411, 420 (7th Cir. 2012). But the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires us to give substantial deference to "the judgment of a State court." 28 U.S.C. § 2254(d). When a claim has been adjudicated on the merits in a state court proceeding, AEDPA bars federal habeas relief unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1) & (2). In this posture, we also defer to state court factual findings, which are presumed correct unless a petitioner rebuts them by clear and convincing evidence. *Id.* § 2254(e)(1).

To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his counsel's performance was deficient and (2) that this "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because a defendant must satisfy both the prejudice and performance prongs, a court considering an ineffective assistance claim need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

A

The state trial court found that Nissenbaum failed to demonstrate both deficient performance and prejudice, but the state appellate court affirmed only on prejudice grounds, leaving the performance prong of Nissenbaum's *Strickland* claim unaddressed. The parties disagree about how this affects our standard of review. Our circuit interprets § 2254(d) as directing federal courts to review only a single state court decision, "[u]nless a state-court opinion adopts or incorporates the reasoning of a prior opinion." *Woolley*, 702 F.3d at 421. When, as here, a lower state court ruled on both *Strickland* prongs but the final state court to adjudicate the claim addressed only one, we have held that our deferential review under § 2254(d) extends only to the prong adjudicated by the last state court, meaning we review the remaining prong de novo. *Thomas v. Clements*, 789 F.3d 760, 766–67 (7th Cir. 2015).

The State asks us to overrule *Thomas* and hold that when the last state court to adjudicate a *Strickland* claim addresses only one prong, courts should extend their deferential review under § 2254(d) to the lower court's reasoning on the remaining prong. In support of this "look through" approach, the State points us to *Wilson v. Sellers*, 584 U.S. 122 (2018), which addressed how federal courts should conduct a § 2254(d) review when the last state court to adjudicate the claim issued only a summary affirmance of a lower court's judgment without any reasoning. In such a situation, the Supreme Court instructs federal courts to adopt a rebuttable presumption that the higher court agreed with the lower court's reasoning and, accordingly, to direct the § 2254(d) review to the reasoning of the lower court. *Id.* at 128–30. Though *Wilson* says nothing about applying this look through presumption when a higher

court has provided reasoning for its decision, the State urges us to extend *Wilson*'s logic to the review of *Strickland* claims. But whatever tension—if any—exists between *Wilson* and *Thomas*, we need not resolve this issue today. The standard of review we apply to the performance prong is only relevant if Nissenbaum can show that the Illinois appellate court's decision on the prejudice prong was unreasonable under § 2254(d). Because Nissenbaum cannot make this showing, we need not consider the issue of Truesdale's performance.

B

To establish *Strickland* prejudice in the context of pleas, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). And to show prejudice when it is alleged that ineffective assistance caused a plea offer to lapse, the petitioner must demonstrate "a reasonable probability" that (1) "they would have accepted the earlier plea offer had they been afforded effective assistance of counsel," (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," and (3) "the end result of the criminal process would have been more favorable," resulting in either a lesser charge or sentence than the petitioner received. *Missouri v. Frye*, 566 U.S. 134, 147 (2012). This is a mixed question of law and fact where "reasonable probability" means a probability "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 698.

The Illinois appellate court concluded that Nissenbaum could not show prejudice because even if ASA Bagby's plea proposal had developed into a formal offer, there was not a reasonable probability that Nissenbaum would have accepted

it—let alone that he would have done so before the offer was withdrawn. We may only grant habeas relief if we find that this decision was contrary to or an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1). This is a demanding standard to overcome. To qualify as unreasonable under § 2254(d), "the state court's decision must have been more than incorrect or erroneous," *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003); rather, the error must be "beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

1

Nissenbaum first argues that the Illinois appellate court applied the wrong legal standard—more specifically, he says that the court erroneously treated the reasonable probability analysis as a question of pure fact and, accordingly, held him to a heightened "manifest weight of the evidence" standard. Under AEDPA, we do not owe deference to a state court's decision if the state has imposed "a burden contrary to law." *Dunn v. Neal*, 44 F.4th 696, 706 (7th Cir. 2022). But it is far from clear that the Illinois appellate court in fact applied a heightened standard. At the outset, the appellate court correctly recited and defined reasonable probability as the showing necessary for Nissenbaum to establish prejudice. The court also explained that, under Illinois law, a state appellate court reviews the ultimate legal issue of ineffective assistance de novo but reviews a trial court's factual findings on a *Strickland* claim deferentially under a manifest weight of the evidence standard. *People v. Stanley*, 921 N.E.2d 445, 456 (Ill. App. Ct. 2009). Accordingly, the appellate court's order references a manifest weight standard where Nissenbaum attempted to dispute the trial court's factual findings.

It's true that one statement at the end of the order appears to conflate the manifest weight standard with the question of whether a reasonable probability existed:

> Mr. Nissenbaum has failed to demonstrate a reasonable probability that, but for counsel's deficient performance, he could or would have accepted a plea offer from the State. He has fallen far short of demonstrating that the trial court's finding that this probability did not exist was contrary to the manifest weight of the evidence.

But having correctly stated and applied the legal standard elsewhere in the order, we think it "more likely that the court stated its conclusion imprecisely than that it applied a different standard." *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006); see also *Olvera v. Gomez*, 2 F.4th 659, 670 (7th Cir. 2021) ("When examining a state court's articulation of the *Strickland* standard, we must keep in mind the presumption that state courts know and follow the law and give their articulation of that standard the benefit of the doubt.") (quotations omitted).

Though the appellate court perhaps phrased the standard of review imprecisely in its conclusion, it is evident that the court adequately differentiated between factual findings (to which it applied the manifest weight standard) and the overarching, mixed question of reasonable probability. Cf. *Dunn*, 44 F.4th at 703–04 (refusing to defer under AEDPA where the state court not only repeatedly misstated but actually applied the improper legal standard). Here, the trial court made numerous factual findings that informed the reasonable probability analysis. Most importantly, the court found that Nissenbaum "understood he was facing a nonprobationable sentence" yet "did not want an offer"—rather, it was "clear that

Mr. Nissenbaum wanted a trial." The appellate court accepted these factual findings because Nissenbaum failed to show they were against the weight of the evidence. Nissenbaum argues that the appellate court's approach collapsed the reasonable probability analysis into a question of pure fact. But the appellate court did not simply adopt the district court's factual findings and end the analysis there. Rather, it applied those facts to the law and independently assessed whether there was a reasonable probability that Nissenbaum would have accepted an offer and could have done so before it was revoked.

2

Having established that the state appellate court applied the correct legal standard, we turn now to the substance of its reasoning. As an initial matter, we agree with the appellate court that ASA Bagby's text message in March 2017 was not a formal plea offer. Both Truesdale and ASA Bagby testified that they did not understand the text message as an offer, and the proposal was phrased only in tentative terms. A formal plea offer is not necessarily required to show prejudice, but Nissenbaum must "show—at a minimum—that the prosecutor would have actually offered him a deal had his attorney been competent." *Delatorre v. United States*, 847 F.3d 837, 846 (7th Cir. 2017). And as the appellate court correctly observed, the lack of a formal offer, though not dispositive, necessarily renders Nissenbaum's claim of prejudice more speculative.

It was likewise reasonable for the appellate court to conclude that even if Nissenbaum had aggressively pursued ASA Bagby's proposal, there was not a reasonable probability that he could have accepted and finalized an offer before it would have been revoked. ASA Bagby suggested a domestic battery

plea on March 24, 2017, before she had an opportunity to speak with D.K. But when ASA Bagby conferred with D.K. on April 11, she learned that D.K. was adamantly opposed to any plea that did not include a sex offense. ASA Bagby then immediately informed Truesdale that a domestic battery plea was off the table. And Nissenbaum's own emails confirm that he was "not ok with being a sex offender." Even assuming that ASA Bagby would not have sought D.K.'s input before formalizing a deal, this timeline suggests that Nissenbaum would have had only 18 days from ASA Bagby's initial text message to negotiate and finalize a domestic battery plea before the offer would have been withdrawn. Nissenbaum says there was a reasonable probability that he could have finalized a deal on or before April 11, relying heavily on ASA Bagby's testimony that had Truesdale approached her wanting to discuss terms, she would have "negotiated a plea with Mr. Nissenbaum on [April 11]." But this statement merely suggests that ASA Bagby would have still been open to formalizing a plea prior to her meeting with D.K. It does not establish that negotiations would have proceeded quickly enough that a plea could have been entered before ASA Bagby met with D.K.

Even if a plea deal could have been finalized in time, Nissenbaum did not show there was a reasonable probability that he would have accepted it. When evaluating prejudice, courts cannot simply rely on "*post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Nissenbaum now says that had he known he was facing a potential 12-year mandatory minimum sentence, he would have jumped at the

opportunity to receive a probation-only sentence. But the contemporaneous evidence as to his preferences undermines this assertion.

Nissenbaum did not pursue ASA Bagby's probation-only proposal even though, by his own account, he believed he was facing a potential 6-year mandatory prison sentence. Of course, the difference between 6 and 12 years is not immaterial, but Nissenbaum's reluctance to pursue a deal for probation when he knew he was facing significant prison time suggests that he gave great weight to factors beyond the length of his sentence. This conclusion is supported by other evidence in the record. Truesdale testified that Nissenbaum was adamantly opposed to having a felony record, citing this as the reason earlier plea negotiations had fallen apart. Nissenbaum denies this, but his own emails to Truesdale emphasized his desire to avoid a felony conviction: "[i]f there is a chance that anything will give me a shot at moving forward in a world without a felony, [my parents] will support it and pay for it." It's true that when Nissenbaum emailed Truesdale about a potential plea, he said nothing about a felony—the only conditions he put in writing were that he did not want prison time and did not want to be a sex offender. But when presented with a deal that seemingly met these requirements, Nissenbaum did nothing. From this fact, a reasonable jurist could conclude that Truesdale's testimony—that Nissenbaum was unwilling to accept a plea to a felony charge—was accurate and that there was therefore no reasonable probability he would have accepted a plea to aggravated domestic battery.

Finally, Nissenbaum argues that he would have taken a plea deal had Truesdale not given him unrealistic expectations of his chances of being acquitted at trial. But the trial

court determined that Truesdale accurately advised Nissenbaum "of the strengths and weaknesses not only of the State's case but of [his] own theory of his defense," a finding Nissenbaum has not rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, even though a "defendant [who] has no plausible chance of an acquittal at trial" will likely "accept a plea if the Government offers one," *Lee*, 582 U.S. at 367, it's not true that Nissenbaum faced no possibility of acquittal. Because Nissenbaum relied on a consent defense, the case turned largely on his and D.K.'s respective credibility. And in the lead up to trial, it was not clear whether D.K. was going to cooperate with the prosecution or testify. Under these circumstances, a well-informed defendant in Nissenbaum's position could have rationally chosen to proceed to trial in the hope of securing an acquittal rather than take a plea.

Because the state appellate court's decision on the merits of Nissenbaum's ineffective assistance of counsel claim was not an unreasonable application of federal law, we find that Nissenbaum's petition for habeas relief is barred under 28 U.S.C. § 2254(d).

AFFIRMED