2020 IL App (1st) 172107-U

No. 1-17-2107

November 9, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 20806 |
| | ) | |
| DIONELL PAYNE, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions for robbery and burglary are affirmed over his challenge to the sufficiency of the evidence and his claim of ineffective assistance of counsel.

¶ 2    Following a jury trial, defendant Dionell Payne was found guilty of one count of robbery and one count of burglary and sentenced to 12 years' imprisonment. On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt where eyewitness identifications were unreliable, and the evidence established his alibi. He also argues the trial court erroneously

denied his posttrial motion alleging he received ineffective assistance of counsel where his trial counsel did not investigate or present additional evidence supporting his alibi. We affirm.

¶ 3                                   BACKGROUND

¶ 4     Defendant was charged with one count each of robbery, burglary, and unlawful restraint.[1] The robbery count alleged he knowingly took a wallet, credit cards, identification cards, and a checkbook from the presence of Jelena Pavlovic by the use of force or threatening the imminent use of force.[2] 720 ILCS 5/18-1(a) (West 2012). The burglary count alleged he, knowingly and without authority, entered Pavlovic's BMW with intent to commit theft therein. 720 ILCS 5/19-1(a) (West 2012). The unlawful restraint count alleged defendant knowingly and without legal authority detained Pavlovic. 720 ILCS 5/10-3(a) (West 2012). As defendant only raises issues of identification, alibi, and ineffective assistance of counsel, we recite only those facts necessary to decide this appeal.

¶ 5     Jelena Pavlovic testified her car broke down on the I-94 expressway at 59th Street at approximately 8:00 a.m. on October 17, 2012. She pulled over to the shoulder and called for a tow truck. As she sat in her car, a silver car pulled over and parked a few feet in front of her car. Defendant, whom Pavlovic identified in court, was the only person in the silver car. He wore blue jeans and a brown jacket, and nothing covered his face.

¶ 6     Defendant walked toward Pavlovic's car; he did not use a cane. Defendant stood "[l]iterally right in front of [her] car right next to [her] door" and asked if she needed help. Pavlovic said she

---

[1] Defendant was also charged with three counts of aggravated battery (720 ILCS 5/12-3.05(a)(1), (c) (West 2012)), which were *nol-prossed* before trial.

[2] The indictment spells the victim's last name "Pavlovik," but she spelled it "Pavlovic" at trial. We use the spelling she provided.

did not, but finally agreed to let defendant help her and opened the hood of her car. Defendant said her car needed antifreeze, and Pavlovic noticed he was "limping a little" as he walked back to his car to get antifreeze. Defendant put antifreeze in Pavlovic's car, but she was still unable to start it. She let defendant sit in the driver's seat of her car in an attempt to start the engine.

¶ 7    Pavlovic was standing "right next to the driver's doors" when she noticed something missing from her purse in the front passenger seat. She told defendant to get out of her car, which he did, and he walked quickly toward his car. Pavlovic saw her wallet was missing from her purse, so she chased after defendant and grabbed his jacket. She asked where her wallet was, and defendant said he did not have it. Pavlovic saw her wallet underneath defendant's right arm. Defendant pushed her away and got in the driver's seat of his car. Pavlovic chased defendant to his car and saw a wallet between his legs, and then saw him toss the wallet on the passenger seat. Pavlovic reached through the open driver's side door and over defendant to grab her wallet, and he pushed her back. Defendant started his car and began driving. He pushed Pavlovic again, and she fell to the roadway. Approximately 30 minutes elapsed between the time defendant first approached Pavlovic's car and the time he drove away.

¶ 8    Pavlovic called police, who arrived shortly thereafter. Around noon that day, she identified defendant in a photo array. That evening, she identified defendant in a lineup. Defendant was not wearing a brown jacket when Pavlovic viewed the lineup, and she asked detectives where it was. Pavlovic identified the brown jacket defendant was wearing at the time of the incident in a photograph.

¶ 9 On cross-examination, Pavlovic testified "this incident all happened between 8:00 and 9:00 a.m." Her car breaking down made her "upset." After she pulled over, she sat in her car for "maybe 15 minutes" before defendant arrived.

¶ 10 Dennis Altgilbers testified he was driving northbound on I-94 at approximately 8:30 a.m. on October 17, 2012, when he saw a gray BMW parked behind a gray Ford Focus on the shoulder, and a woman next to the driver's door of the Ford. The Ford "accelerated to take off," and the woman fell to the ground. Altgilbers pulled in front of the Ford to stop it. Altgilbers "was looking right at" the man driving the Ford, whom he identified in court as defendant, and was "right next to" defendant as he "tried to pin [defendant] from taking off." Nothing blocked Altgilbers's view of defendant. He followed defendant's car northbound on I-94, called 911, and provided a description of defendant's car and its rear license plate number. Later that day, Altgilbers "ma[d]e an identification" in a photo array and a lineup. At trial, Altgilbers identified defendant in the photo array, a photograph of the lineup, and an individual photograph.

¶ 11 On cross-examination, Altgilbers testified he saw defendant's face through the closed passenger-side window of his own car. The windows of defendant's car were not tinted.

¶ 12 Illinois State Police special agent Jonathan Parker testified he was assigned to investigate a robbery on October 17, 2012. Parker obtained the license plate number Altgilbers provided to 911, which he matched to a silver Ford Focus registered to defendant. Parker created a photo array that included a photograph of defendant, whom he identified in court. Prior to viewing this photo array, Pavlovic and Altgilbers signed forms advising them the suspect might not be in the photo array, they were not obligated to make identifications, and they should not assume the person administering the photo array knew which person was the suspect. Pavlovic's advisory form is

dated October 17, 2012, at 12:13 p.m.; Altgilbers's is dated October 17, 2012, at 12:41 p.m. Parker testified Pavlovic identified defendant in the photo array "instantaneous[ly]," and Altgilbers identified defendant "instant[ly]." These advisory forms and photo arrays were entered into evidence.

¶ 13    Defendant was arrested during the afternoon of October 17, 2012. He was pulled over in a silver Ford Focus with a front license plate number that matched the number Altgilbers provided, but no rear license plate. In the evening, Pavlovic and Altgilbers came to the police station where defendant was in custody to view a lineup. Prior to viewing the lineup, Pavlovic and Altgilbers signed forms advising them the suspect might not be in the lineup, they were not obligated to make identifications, and they should not assume the person administering the lineup knew which person was the suspect. Pavlovic's advisory form is dated October 17, 2012, at 7:37 p.m.; Altgilbers's is dated October 17, 2012, at 7:34 p.m. Parker testified Pavlovic identified defendant "almost instantaneous[ly]," and Altgilbers identified defendant as well. At trial, Parker identified a photograph of the lineup and an individual photograph of defendant in custody. These photographs and the lineup advisory forms were admitted into evidence.

¶ 14    Illinois State Police forensic scientists testified defendant was excluded from fingerprints and DNA samples taken from Pavlovic's car.

¶ 15    The trial court granted defendant's motion for a directed finding with respect to the unlawful restraint count, but denied with respect to the robbery and burglary counts.

¶ 16    The parties stipulated Teayre Ferba would testify, in relevant part:

"[S]he was employed as a receptionist at Longwood Charter School on October 17, 2012. She first saw the Defendant on October 17, 2012 in the hallway of the school as she was

walking to the teacher's lounge to get some tea. She believed that it was approximately between 8:30 a.m. and 9:00 a.m. It could have also been between 9 and 9:30 a.m. When the investigating agents asked how certain she was about the time line in which she first saw the Defendant, she said it was about 50 percent."

¶ 17    In rebuttal, Veronica Avila-Lopez testified she worked as a receptionist at Chicago International Charter School Longwood campus (Longwood) on the morning of October 17, 2012. She arrived at work after 8:00 a.m., and "at least an hour" later, she saw defendant in the doorway of the main office. She knew defendant, as he had children in the school. Defendant "screamed" her name and said he had "been waiting all morning" to see the principal. Defendant left the office, and Avila-Lopez did not see him again that day. A few minutes after defendant left the office, Avila-Lopez sent the principal an email about defendant wanting to see him. A copy of this email had a time stamp of 9:55 a.m.

¶ 18    A security desk at Longwood kept a log of visitors. Avila-Lopez identified the visitor's log for October 17, 2012. The visitor's log consists of two pages dated "Wednesday 10/17/12." On the first page, entries are in chronological order from 7:00 a.m. to 9:32 a.m. On the second page, the first entry has no time. The second entry appears to have a time of 8:3X; the last digit is illegible.[3] This entry is labeled "Parent" and what appears to be the name "D. Payne." The next entry has a time of 9:58 a.m., and the following entries continue in chronological order until 11:50 a.m.

¶ 19    On cross-examination, Avila-Lopez acknowledged she told police she arrived at work at 6:00 a.m. on October 17, 2012. She was "generally" at her desk between 8:00 a.m. and 9:00 a.m.

¶ 20    The jury found defendant guilty of both robbery and burglary.

---

[3] Avila-Lopez testified the time of this entry was 8:30 a.m., and it was signed by "D. Payne."

¶ 21    Defendant filed a *pro se* posttrial motion alleging ineffective assistance of trial counsel. The trial court appointed new counsel, who filed a motion for a new trial, also alleging ineffective assistance for, *inter alia*, trial counsel's failure to present additional evidence in support of defendant's alibi he was at Longwood at the time of the incident.

¶ 22    At a hearing on these motions, the parties stipulated to the testimony of several teachers at Longwood and an Illinois State Police officer who interviewed them on October 18, 2012.[4] Teacher Dan Such stated defendant's son came to his first period class at approximately 8:00 a.m. on October 17, 2012, but defendant was not with him. First period lasted from 7:45 a.m. to 8:54 a.m. Lutha Maura stated neither defendant nor his son attended the second period class, which lasted from 8:57 a.m. to 9:51 a.m. Several other teachers stated both defendant and his son attended the third, fourth, and fifth period classes, which lasted from 10:00 a.m. to 2:18 p.m. During fifth period, which lasted from 12:30 p.m. to 1:20 p.m., defendant told a Ms. Wilson he had been at Longwood all day.

¶ 23    Private investigator Alice Washington testified she obtained surveillance video recordings from October 17, 2012, from Longwood. A recording with a time stamp of 8:26 a.m. showed, as the court described, "a person walking away from the camera so you can see the person's back, [but] you don't actually see the person's face." This video recording was admitted into evidence.[5]

---

[4] Defendant's motion for a new trial included as exhibits two affidavits that were not introduced at the hearing on his posttrial motions. Defendant's daughter, Venidra Payne, stated defendant drove her to Longwood on the morning of October 17, 2012. She did "not know the exact time [they] arrived at the school, but it would have been around 8:00 a.m." because she went to her first period class. An affidavit from Ferba stated she saw defendant at Longwood "between 8:00 a.m. and 8:45 a.m." The court did not consider the substance of Ferba's affidavit, and only considered it to "note that that person exists and might be called as a witness in the future, if a new trial was ordered."

[5] This video recording is not included in the record on appeal.

¶ 24    On cross-examination, Washington testified she did not verify whether the time stamp on the video recording was accurate. She acknowledged she could not determine the height, weight, race, or facial features of the person depicted in the video, but she could see the person was wearing a "light colored jacket."

¶ 25    On redirect examination, Washington testified the height and weight of the person depicted in the video were consistent with defendant's height and weight as documented in police reports. The person in the video walked with a cane in his right hand, which was consistent with what Washington "knew of" defendant.

¶ 26    Defendant's son, Dionell Payne, Jr. (Junior), testified defendant drove him to Longwood on October 17, 2012. He was "not quite sure what time" they arrived. Junior entered Longwood with defendant, who talked to a security guard while Junior went to his locker. Junior went to the main office for a disciplinary issue and saw defendant there. Junior did not know what time he was "done" in the main office, but he and defendant attended classes together for the rest of the day thereafter. Junior identified defendant in the surveillance video recording from Longwood.

¶ 27    On crosss-examination, Junior testified he was "not sure" what time he saw defendant in the main office, but he went to the main office right after he arrived at his first period class. He acknowledged that, in an affidavit, he stated he did "not know the exact time [he and defendant] arrived to the school, but it would have been somewhere around 8:00 a.m." In the affidavit, he also stated he saw defendant in the main office at the beginning of second period.

¶ 28    The court denied defendant's motion for a new trial, finding he failed to establish a claim of ineffective assistance of counsel because the additional alibi evidence would not have changed the outcome of the trial.

¶ 29    The court sentenced defendant to 12 years on each count, to run concurrently.

¶ 30    Defendant timely appealed.

¶ 31                                ANALSIS

¶ 32    On appeal, defendant first contends the evidence was insufficient to prove him guilty of robbery and burglary where Pavlovic and Altgilbers's identifications of him were unreliable and the evidence established he was at Longwood at the time of the robbery.[6]

¶ 33    When a defendant challenges the sufficiency of the evidence supporting his conviction, the issue is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. *People v. Brown*, 2013 IL 114196, ¶ 48. We do not retry the defendant or substitute our judgment for that of the trier of fact on issues involving the weight of the evidence or credibility of witnesses. *Id.* We will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of a defendant's guilt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 34    To prove defendant guilty of robbery, the State had to establish beyond a reasonable doubt he knowingly took property from the presence of Pavlovic by the use of force or by threatening the imminent use of force. See 720 ILCS 5/18-1(a) (West 2012). To prove defendant guilty of

---

[6] Defendant was found guilty of both robbery and burglary. On appeal, he does not dispute such crimes occurred; he only disputes whether he was the person who committed them. For brevity, we refer to the incident at 59th and I-94 on the morning of October 17, 2012, as "the robbery."

burglary, the State had to establish beyond a reasonable he, without authority, knowingly entered Pavlovic's motor vehicle with the intent to commit a theft. See 720 ILCS 5/19-1(a) (West 2012).

¶ 35     We find a rational trier of fact could conclude defendant committed the robbery and burglary of Pavlovic. Pavlovic and Altgilbers identified defendant as the offender in photo arrays and lineups, and at trial. "In assessing identification testimony, Illinois courts rely on the factors set out by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199-200 * * * (1972)." *Id.* "Those factors are: (1) the opportunity the witness had to view the offender at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the offender; (4) the level of certainty demonstrated by the witness at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." *Id.* "In * * * undertaking a review of the [*Biggers*] factors * * * it is the function of the trier of fact to assess the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *People v. Romero*, 384 Ill. App. 3d 125, 132 (2008).

¶ 36     Here, the *Biggers* factors support a conclusion Pavlovic and Altgilbers's identifications of defendant were reliable. Pavlovic had the opportunity to view defendant over the course of approximately 30 minutes, between the time he first approached her car and the time he drove off. She saw defendant three times in close proximity: (1) when he first approached her car and asked if she needed help; (2) when he sat in the driver's seat of her car and tried to start it; and (3) when she tried to retrieve her wallet from his car. Altgilbers had a briefer opportunity to observe defendant, but was "right next to" defendant, viewing him through untinted windows, when he did so. Both witnesses identified defendant immediately in photo arrays, and Pavlovic identified defendant almost immediately in a lineup. The jury could have rationally interpreted this evidence

as suggesting a high level of certainty in their identifications. Both witnesses identified defendant in photo arrays approximately 4 hours after the robbery, and in lineups approximately 11 hours after the robbery. Thus, under the *Biggers* factors, a rational factfinder could conclude these identifications were reliable and sufficient to support findings of guilt.

¶ 37    Nevertheless, defendant contends Pavlovic and Altgilbers's identifications were unreliable. Defendant cites the "stress of the event," the witnesses' limited opportunities to see his face, and their lack of detailed descriptions to police as supporting a finding those identifications were unreliable. However, the jury already heard all of these arguments and, given the guilty verdicts, appears to have rejected them. Thus, we find defendant's arguments unpersuasive. See *People v. Baugh*, 358 Ill. App. 3d 718, 737 (2005).

¶ 38    Defendant's argument that "no physical evidence corroborated Pavlovic or Altgilbers's identification[s]" is similarly unpersuasive, as physical evidence is not necessary to corroborate eyewitness accounts. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 91. Defendant also contends the identifications were unreliable because they were cross-racial. However, nothing in the record on appeal addresses what, if any, effect the cross-racial nature of these identifications had on their reliability, and defendant presents no authority holding that cross-racial identifications are automatically unreliable. Thus, we do not find Pavlovic and Alitgilbers's identifications were so unreliable as to warrant reversal of defendant's convictions.

¶ 39    Defendant also argues the evidence established he was at his children's school, Longwood, at the time of the incident. We disagree. Altgilbers testified defendant drove away from 59th and I-94 at approximately 8:30 a.m., and Pavlovic's testimony suggested he drove away closer to 8:45 a.m. Ferba's stipulated testimony stated she saw defendant at Longwood at some point between

8:30 a.m. and 9:30 a.m., with only "50%" certainty about the earliest time she saw him. Ferba's testimony suggested defendant may have been at Longwood at the time of the robbery. However, her testimony also supported a rational conclusion defendant left the scene of the robbery and arrived at Longwood 45 to 60 minutes later, at 9:30 a.m. Similarly, Avila-Lopez's testimony and email supported a reasonable inference defendant was in Longwood's main office shortly before 9:55 a.m., well after the time of the robbery.

¶ 40    The jury could have considered the visitor log, which indicated defendant signed in at Longwood at approximately 8:30 a.m. But the jury was also free to reject the visitor's log given that defendant's entry is out of chronological order and difficult to read.

¶ 41    Altogether, the evidence supported conflicting inferences as to defendant's whereabouts at the time of the robbery. Thus, "it is best left to the trier of fact for proper resolution." *People v. Moore*, 365 Ill. App. 3d 53, 58 (2006). "[T]he weight to be given alibi evidence is a question of credibility for the trier of fact, and there is no obligation on the trier of fact to accept alibi testimony over positive identification of an accused." *Corral*, 2019 IL App (1st) 171501, ¶ 90. We defer to the jury's judgment with respect to defendant's alibi (see *People v. Jackson*, 232 Ill. 2d 246, 281 (2009)), which the jury must have rejected given its findings of guilt. Accordingly, we find the evidence sufficient to support the jury's findings of guilt, and we affirm defendant's convictions.

¶ 42    Defendant next contends he received ineffective assistance of counsel because his trial counsel failed to present the testimony of his son, the stipulated testimony of teachers at Longwood, the surveillance video recording that purportedly shows defendant at Longwood at 8:26 a.m., and Ferba's affidavit stating she saw defendant at Longwood between 8:00 a.m. and

8:45 a.m.[7] Defendant maintains this additional evidence would have provided a "far more substantial alibi," creating a "reasonable probability" the outcome of trial would have been different.

¶ 43    Defendant presented this evidence and essentially the same arguments at the the hearing on his posttrial motions. Defendant's notice of appeal indicates he is appealing from the judgment of July 14, 2017, which was the date the trial court denied his posttrial motions at the conclusion of the hearing. Thus, we construe defendant's argument as a claim the trial court erroneously denied his posttrial motions premised on his allegation trial counsel was ineffective for failing to present the additional alibi evidence.

¶ 44    Ineffective assistance of counsel claims are evaluated under *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cherry*, 2016 IL 118728, ¶ 24. Defendant must show his trial counsel's performance was so deficient as to fall below an objective standard of reasonableness and that the deficient performance so prejudiced defendant as to deny him a fair trial. *Id.* Prejudice is a reasonable probability that the outcome of the trial would have been different or that the result of the proceeding was unreliable or fundamentally unfair. *Strickland*, 466 U.S. at 687-88; *People v. Hall*, 217 Ill. 2d 324, 334 (2005).

¶ 45    A defendant's failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *Strickland*, 455 U.S. at 697; *People v. Houston*, 226 Ill. 2d 135, 144-45 (2007). If it is easier to decide a claim of ineffective assistance on the prejudice prong rather than the deficient performance prong, a court should do so. *Strickland*, 466 U.S. at 697.

_____

[7] As noted previously, the surveillance video recording is not included in the record on appeal, and the trial court did not admit Ferba's affidavit for its substance at the hearing. Defendant submitted Ferba's affidavit to the trial court as an attachment to his posttrial motions.

"Determining whether defense counsel provided ineffective assistance involves a bifurcated standard of review, wherein we defer to the trial court's findings of fact unless they are against the manifest weight of the evidence, but make a *de novo* assessment of the ultimate legal issue of whether counsel's actions support an ineffective assistance claim." *People v. Stanley*, 397 Ill. App. 3d 598, 612 (2009).

¶ 46    Counsel's performance is presumed to be reasonable, and " 'strategic choices, made after investigating the law and the facts, are virtually unchallengeable.' " *People v. Velez*, 388 Ill. App. 3d 493, 502-503 (2009) (quoting *People v. Griffin*, 178 Ill. 2d 65, 86 (1997)). A defendant who claims ineffective assistance of counsel has the burden to "overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy." *People v. Anderson*, 2013 IL App (2d) 111183, ¶ 54. " 'Defense counsel has a professional obligation, both legal and ethical, to explore and investigate a client's alibi defense.' " *People v. English*, 403 Ill. App. 3d 121, 137 (2010) (quoting *People v. Morris*, 335 Ill. App. 3d 70, 79 (2002)). However, " '[w]hether defense counsel was ineffective for failure to investigate is determined by the value of the evidence that was not presented at trial and the closeness of the evidence that was presented.' " *Id.* (quoting *Morris*, 335 Ill. App. 3d at 79).

¶ 47    We find that the trial court did not err in denying defendant's posttrial motions. We agree with the trial court that defendant has not shown a reasonable probability the result of the trial would have been different with the additional alibi evidence; thus, he has not established the prejudice prong of the *Strickland* test. None of the teachers saw defendant at Longwood until 10:00 a.m., more than an hour after the robbery. Defendant's son and daughter did not know what time they and defendant arrived at Longwood, except that it was at some point during first period, which

ran from 7:45 a.m. to 8:54 a.m. The children's testimony suggested defendant may have been at Longwood at the time of the robbery. However, it did not negate the possibility he was at 59th and I-94 between approximately 8:15 a.m. and 8:45 a.m., and was at Longwood before or after the robbery. The surveillance video recording did not establish defendant was at Longwood at the time of the robbery, because no witness testified to the accuracy of the time stamp on the video.

¶ 48   Here, two witnesses positively identified defendant. Their testimony was sufficient to sustain his convictions even if the additional alibi evidence had been presented at trial. Accordingly, defendant cannot show he was prejudiced by any alleged ineffectiveness of his trial counsel, so the trial court did not err in denying his posttrial motions based on ineffective assistance of counsel. Thus, we affirm defendant's convictions.

¶ 49                           CONCLUSION

¶ 50   For the foregoing reasons, we affirm the judgment of the trial court.

¶ 51   Affirmed.